[Crim. No. 1073.   Department Two.—April 29, 1904.]

## THE PEOPLE, Respondent, v. ERNEST MOORE CHADWICK, Appellant.

CRIMINAL LAW—SENDING FORGED TELEGRAM—INFORMATION.—An information charging the crime of sending by telegraph a false and forged message, purporting to be from another person, and averring that defendant, at a certain time and place, "did then and there knowingly, willfully, unlawfully, feloniously, fraudulently, and falsely make and forge a certain telegraphic message," purporting to be from a person named, which message was set forth in full, and that defendant, "well knowing the same to be false and forged, did then and there . . . send the said message," sufficiently shows that the message was sent by telegraph.

ID.—" INTENT TO DECEIVE "—LANGUAGE OF STATUTE.—Under section 474 of the Penal Code, the crime of forging telegraphic messages "with the intent to deceive" is a specific offense, these words not being found in the general section upon forgeries. An information under that section need not allege the nature of the deceit; but it is sufficient that it embodies the language of that section; and in such case it cannot be said that the instrument, if genuine, would not have legal efficacy, or that it could not injure, defraud, or deceive the person addressed.

ID.—SUFFICIENCY OF PROOF OF DECEIT—OBTAINING MARRIAGE BY DECEIT—FORGERY OF MOTHER'S NAME.—It was sufficient proof of deceit that the person addressed by a forged message in the name of her mother was induced thereby to change her *status* and intermarry with the defendant, which she would not otherwise have done but for the false belief induced by the forged telegram that her mother had withdrawn her objections to such marriage.

ID.—DISMISSAL—DELAY CAUSED BY MISTRIAL.—The defendant is not entitled to dismiss the information upon the ground that the defendant had not been brought to trial within sixty days, where he was in fact brought to trial within that period, and the result was a mistrial, and within sixty days thereafter the defendant consented to a further postponement.

ID.—EVIDENCE—VARIANCE—DELIVERY OF TELEGRAM TO OPERATOR.—Evidence that the forged telegram was delivered to a telegraph operator by the defendant, to be sent by telegraph, and that it was so sent, does not show a material variance from the averment that the defendant sent the forged telegraphic message.

ID.—PRIOR CONVICTION—CHANGE OF PLEA—PLEA OF GUILTY.—Where the defendant, after having pleaded not guilty to a prior conviction, withdrew his plea after the jury were sworn and substituted a plea of guilty before the information was read to the jury, which did not include the reading of the prior conviction, the defendant cannot be prejudiced by the failure of the jury to find upon the original plea, upon which no issue was presented to the jury.

ID.—ERROR IN MODIFICATION OF INSTRUCTIONS.—Where instructions were properly requested by the defendant, which were legal as applied to the evidence for the defendant, it was erroneous for the court to modify them by repeatedly introducing foreign matter in them in relation to the credibility of the defendant as a witness. It was unjust for the court, where hypothetical instructions, given of its own motion, contained no word of caution, to modify hypothetical requests of the defendant by words of caution, though it would be proper to give in general terms words of caution as to such instructions.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Frank J. Murphy, for Appellant.

U. S. Webb, Attorney-General, and E. B. Power, Deputy Attorney-General, for Respondent.

HENSHAW, J.—The charge against the defendant was sending by telegraph a false and forged message, purporting to be from another person. The information was in the language following:—

"The People of the State of California against Ernest Moore Chadwick, in the Superior Court of the City and County of San Francisco, State of California, the 28th day of March, A. D. 1901. Ernest Moore Chadwick is accused by the district attorney by this information of the crime of felony, to wit: Sending by telegraph a false and forged message purporting to be from another person, committed as fol-

lows: The said Ernest Moore Chadwick, on the 23d day of February, A. D. 1901, at the said city and county of San Francisco, state of California, did then and there, knowingly, willfully, unlawfully, feloniously, fraudulently, and falsely make and forge a certain telegraphic message purporting to be from one Marie Schneider, in the words and figures following, to wit:—

" 'The Western Union Telegraph Company (Incorporated).

" 'Twenty-one thousand offices in America. Cable service to all the world.

Feb. 23d, 1901.

To Miss Nora Schneider,
      Vallejo Junction, Cal.

Do what Ernest tells you at once.

MARIE SCHNEIDER, S. F.'

" (1 cent revenue stamp.)

"And then and there, well knowing the same to be false and forged, did then and there willfully and unlawfully, feloniously, and fraudulently, knowingly and designedly send the said message to one Nora Schneider at Vallejo Junction, state of California, with intent then and there to prejudice, injure, damage, defraud, and deceive said Nora Schneider contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the people of the state of California.

"PRIOR CONVICTION.

"And the district attorney doth further charge that the said Ernest Moore Chadwick, before the commission of the offenses charged in this information, was, in the superior court, department No. 12, of the city and county of San Francisco, state of California, convicted of a felony, to wit: Uttering and passing a fictitious bill and draft, under the name of Harry Westwood Cooper.

"And the judgment of said court against said defendant on said conviction was pronounced and rendered on the 14th day of January, A. D. 1898, and bears said last mentioned date; and said judgment has never been reversed, annulled, nor set aside."

The defendant was convicted, and appeals from the judgment and from the order denying his motion for a new trial.

The defendant demurred to the information, and upon this appeal urges the points made in demurrer. He contends that the information is insufficient under section 474 of the Penal Code, in that it fails to show that the message was sent by telegraph; the language of the information in this regard being, that he "did then and there willfully and unlawfully, feloniously and fraudulently, knowingly and designedly send the said message," without alleging that he sent it by telegraph. But while the information is not a model of pleading in this respect, this defect, we think, is sufficiently cured by the allegation previously made that defendant made and forged "a certain telegraphic message," the same message which later it is charged he sent. If a message be in fact a "telegraphic" message, as here stated, and if, as in this case it is charged, this message is sent, there is the declaration that the defendant sent a telegraphic message. It is not easy to perceive how a telegraphic message can be sent other than by telegraph.

It is next urged against the sufficiency of the information that it fails to allege the nature of the deceit practiced upon Norine Schneider, and that, as the message is upon its face harmless, such allegation is necessary to the sufficiency of the pleading. Reference is here made to those cases charging forgery, where the instrument set up as being false and forged is not such an instrument as upon its face shows its capacity to prejudice, damage, or defraud another, within the meaning and intent of the law against forgeries. (Pen. Code, sec. 470.) But it is to be noted that the legislature, in section 474, makes a particular and specific offense of the crime of forging telegraphic messages, and in that section inserts the phrase "with the intent to *deceive*"—words not found in the general section upon forgeries. The information charges in the language of the section, and it cannot be said that the instrument, if genuine, would not have efficacy to, or that it could not injure, defraud, or deceive Norine Schneider.

Defendant contends that the court erred in denying his motion to dismiss the information upon the ground that he had not been brought to trial within sixty days. In this he declares that his case was continued without his assent from April 20, 1901, to September 16, 1901, a period of

one hundred and thirty-one days. But the defendant was brought to trial upon June 13, 1901, and the result was a mistrial. He was not entitled to a dismissal when the delay was caused by a mistrial. (*Ex parte Ross*, 82 Cal. 108.) Upon August 6, 1901, within sixty days from the date of the mistrial, counsel for the defense consented to a further postponement. His consent was a waiver of his right to urge the objection when, upon September 6, 1901, the cause was actually brought on for hearing.

The evidence showed that the defendant furnished the telegram,—that is to say, delivered the telegram to a telegraph operator to be sent by telegraph, and that it was so sent. It is urged that this is a variance from the charge in the information of "sending," and that the actual charge proved was the "furnishing to an operator a forged message to be sent." We do not perceive much force in this distinction. *Qui facit per alium; facit per se.* The defendant sent the message by telegraph when he "furnished" it to a telegraph operator for that purpose, and when that telegraph operator actually so sent it. If the defendant had so furnished the message to the operator, and the operator had failed to send it, the crime of furnishing would have been complete under the law, although the act of sending was never performed. In this case it is alleged and proved that the telegram was both furnished and sent, and the crime charged in the information was therefore fully and properly established.

The facts shown by the prosecution to the satisfaction of the jury were, that the defendant sent the telegram to Norine Schneider as coming from her mother, without the mother's consent; that the purpose and intent of the sending was to deceive Norine Schneider into the belief that the mother had withdrawn her objection to the daughter's marriage with the defendant and so to induce the daughter to marry the defendant, and that the telegram accomplished its intended purpose; that it was wholly false, and sent without the knowledge or consent of the mother whose name it purported to bear. Against the sufficiency of this proof it is urged that it fails to establish deceit in law, because Norine Schneider, at the time of the sending and at the time of the receipt of the telegram, was over the age of eighteen years, was legally entitled to marry without the consent of her

mother, that her mother could not interpose any legal ob-
stacle to her marriage, and that the marriage once consum-
mated was valid between the parties, and not subject to
annulment because of the deceit practiced; that neither No-
rine Schneider nor her mother was deceived within the legal
acceptation of the term. In all of this appellant argues for
the meaning of deceit as being synonymous with the meaning
of defraud in the statute against forgeries—an act whereby
one does, or may, suffer financial loss. But deceit in the law
has a broader significance. ''Any device or false representa-
tion by which one man misleads another to his injury and
fraudulent misrepresentations by which one man deceives
another to the injury of the latter,'' is deceit. (Anderson's
Law Dictionary.) ''While every deceit comprehends a lie,
it is more than a lie on account of the view with which it is
practiced, of its being coupled with some dealing, and of the
injury it is calculated to occasion and does occasion.'' (Id.)
Where, as in this case, a person is induced to change her
*status* from that of an unmarried to that of a married woman,
with all of the duties and obligations pertaining to the
changed relationship, if this result is accomplished by deceit,
she has, within the law, been deceived; she has been induced
to do that which, but for the false practice, she would not
have done, and has been led to change her position in most
vital respects—respects which may affect her financially as
certainly as they affect her social and domestic *status.*

Error is urged in that the jury failed to find on the prior
conviction which had been charged against the defendant. It
appears that upon his arraignment the defendant pleaded not
guilty. After the jury which convicted him had been im-
paneled and sworn, the defendant, through his counsel, and
without the hearing of the jury, moved the court to allow
him to withdraw his former plea of not guilty to the prior
conviction, and permit him to plead guilty to the prior con-
viction, and this was done before the information was read
to the jury. The prior conviction was not read to the jury,
and, of course, no issue was presented to the jury thereon.
We perceive nothing in this of which the defendant can com-
plain.

Numerous exceptions are reserved to the rulings of the
court in admitting and rejecting evidence. Without enter-

ing into a detailed consideration of them, they have been subjected to careful review, and we perceive no error in any of them.

Defendant complains of modifications made by the court to instructions proposed by him, and insists that the modifications injuriously affected his rights, and prevented his defense from receiving from the jury the unbiased consideration which they should have given it. Before adverting to this proposition a word is necessary as to the defense. In brief it was this: Defendant admitted the sending of the telegram; admitted it was sent without the knowledge or approval of the mother, but declared it was sent in pursuance of an agreement and understanding had between himself and Norine Schneider, under which Norine Schneider had agreed to leave her home and marry him, and that, to enable her the more easily to get away from home and meet him, he was to send the telegram which actually was sent. It was in evidence upon the part of the prosecution that the defendant had represented himself to the Schneiders as being a man of wealth and good social position. The court then, at the request of the defendant, gave the instructions following, amending each one of them as indicated by the language inclosed in brackets:—

"9. I charge you that even if you find that the defendant falsely represented himself as a man of wealth and social position to Norine Schneider and concealed from her the fact that he had previously been convicted of felony and thereby induced her to marry him, that this of itself was not sufficient to convict the defendant, nor does it prove any element of the crime charged in the information.

"[In this connection the court charges you that if you find such facts from the evidence in the case, to a moral certainty and beyond a reasonable doubt, it is your duty to consider them in determining the credibility of the defendant as a witness herein.]

"10. In the contract of marriage which forms the gateway to the marriage *status,* the parties take each other for better of for worse, for richer or poorer, to cherish each other in sickness or in health, and consequently a mistake by one of the parties to the marriage, whether resulting from accident or in general from fraudulent practices in respect to char-

acter, fortune, health, or the like, is not a crime under the laws of this state.

"[The court charges you in connection with the statement of law contained in this instruction, that if you find from the evidence in the case that fraud has been practiced in respect to° character, fortune, or health, or the like, it is your duty to consider such fraud in determining the credibility of the witness or witnesses who has or have so practiced it.]

"12. The law indulges in no presumption, nor is a jury permitted to indulge in any presumption that it is more probable that a person previously convicted of felony will commit a subsequent crime.

"[In this connection you are instructed that it is proper for a jury to consider the fact of a prior conviction of felony of a witness in determining the credibility of such witness.]

"14. I charge you that if you find that Norine Schneider, on the 23d day of February, 1901, was more than 18 years of age, that the consent of her mother or father, or either of them, was not essential or necessary to consummate a legal marriage between the said Norine Schneider and the defendant.

"14a. I charge you that if you find that on February 23d, 1901, that Norine Schneider was more than 18 years of age, that she had the right to marry the defendant, or any other person, without the consent of either of her parents.

"14b. I charge you that if you find on February 23d, 1901, that Norine Schneider was 18 years of age or more, that her parents or either of them had no right by process of law, or otherwise, to prevent the said Norine Schneider from marrying any man of her choice.

"[In connection with the three instructions just given you on the subject of the age of the witness Norine Schneider, and the proposition of the consent of her parents to her marrying, you are further instructed as follows:—

"Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary.

"A civil contract has four indispensable elements, namely:

"1. Parties;

"2. Consideration;

"3. Subject-matter, and

"4. Assent.

"The assent may be defined to be a meeting of the minds of the parties upon a lawful subject-matter of and upon a sufficient consideration for a promise to do or not to do a certain thing.

"Females who have attained the age of 18 years have the legal capacity to marry without the consent of either their parents or guardians.

"Therefore, if you should find from the evidence in this case that the said Norine Schneider was over the age of 18 years on February 23, 1901, she would not require the consent of her parents, or of either of them, to her marriage with any person.

"But assuming, merely for the purpose of this instruction, that the said Norine Schneider was over the age of 18 years on said date, you are instructed that if you should find from the evidence in the case, to a moral certainty and beyond a reasonable doubt, that the said Norine Schneider made a conditional promise to marry the defendant upon the consent of her mother being obtained thereto, and did not rely in joining with the defendant in the marriage ceremony claimed to have taken place between them upon her legal capacity to marry with or without the consent of her parents, or of either of them, and was not influenced in any manner by the fact of such legal capacity; that the said Norine Schneider assented to the performance of such marriage ceremony solely upon the assumption that her mother had given her consent to such marriage; that such assumption was due to the fraudulent action of the defendant; that such consent was not given by the mother of the said Norine Schneider; and that the said Norine Schneider was thereby deceived by such fraudulent action of the defendant, as aforesaid, then as a matter of law, there was wanting the necessary element of assent in the civil contract claimed to have been entered into between the said Norine Schneider and the defendant preliminary to the performance of the said marriage ceremony as aforesaid.]

"17. If you find from the evidence that at the time of the sending of said telegram there was a preconceived arrangement between the defendant and Norine Schneider, that such a telegram should be sent by the defendant without the consent, authority, or knowledge of Marie Schneider, and that at

the time of the sending of the telegram the defendant did not intend to defraud, deceive, or injure Norine Schneider by the sending of the said telegram, and if the said Norine Schneider knew when said telegram was received that it was sent without the authority of her mother, then your verdict must be: 'We, the jury, find the defendant not guilty.'

"[The court charges you that in giving the foregoing instruction it does not assume the existence or non-existence of any fact involved in such instruction. It is your exclusive province to resolve the evidence into facts, and then to apply those facts to the law as given to you by the court.]

"18. If you find that Norine Schneider at the time she received said telegram at Crockett knew that the said telegram was not signed, authorized, or sent by her mother, Marie Schneider, and knew that said telegram was sent in pursuance of an arrangement between her, the said Norine Schnei-der, and the defendant, and that she was not deceived thereby, and that the defendant did not intend to deceive, defraud, or injure her in the sending of the said telegram, then your verdict must be not guilty.

"[The court charges you in giving the foregoing instruction it does not assume the existence or non-existence of any fact involved in such instruction. It is your exclusive province to resolve the evidence into facts, and then to apply those facts to the law as given to you by the court.]

"25. As has been stated to you, the defendant is on trial for the crime charged in the information and for no other crime. The law in its wisdom does not undertake to regulate the moral conduct of its subjects, and even if you find that the defendant's co⌐    ⌐t has been very reprehensible morally, still if you are ⌐    ⌐inced of his guilt beyond a reasonable doubt of th    ⌐rged in the information, you should find the ⌐    guilty, no matter what your opinion may be of    herwise.

"[In thi\    he court charges you that if you are satisfied fro.    nce in the case to a moral certainty and beyond a    doubt that the conduct of defendant, apart from the    ,action which it is alleged constitutes the charge herein, ha., been reprehensible morally, it is your duty to consider such evidence in determining the credibility of the defendant as a witness in this case.]"

It will be noticed that no one of these instructions as proposed by the defendant is directed to the question of his credibility as a witness. It will be noticed further that the instructions in and of themselves are unimpeachable in point of law, or the court would and should have rejected them. But, in giving the instructions, although correct in point of law, the court saw fit to detract from their legitimate force, and to draw the jury's attention to a subject entirely foreign to the matter of law sought by the defendant to be presented. Thus, in instruction 9, the jury were charged that false representations of the defendant's wealth and social position, if made by him, and concealment of the fact that he had been previously convicted of a felony, were not sufficient to convict the defendant, and did not prove any element of the crime for which he was then on trial. But "in this connection," says the court, "it is your duty to consider these facts in determining the credibility of the defendant as a witness." As the instruction proposed by defendant did not in any way bear upon his credibility, the modification given was not "in this connection," but imported an element foreign to the matter concerning which the defendant asked that the jury be enlightened. The same is true of instruction 10 and of instruction 12 and instruction 25, while in instructions 17 and 18 the same result is accomplished by a slightly different method. Instructions 17 and 18 are hypothetical, but are addressed with strict propriety to the evidence and the contention of the defense. Yet, as to those two instructions only, and with specific reference to those two instructions only, the court charges the jury that in giving them it does not assume the existence or non-existence of any fact involved in them. It would be perfectly proper for the court in general terms to say that as to any and all of the instructions which it may give and which contain any hypothetical statement of facts, whether given at the request of the people or at the request of the defense, the jury are not to consider that the court in giving them assumes the existence or non-existence of any fact therein stated, and that they are addressed within the evidence to the respective theories of the prosecution and defense. But it is manifestly unjust for a court to give such hypothetical instructions even of its own motion, coupled with no such word of caution, and to apply such direction and warning to the

jury only in the case of the instructions asked by the defense. So, as to the modifications of the instructions, above pointed out, it worked a manifest injury to the defendant to have the jury's mind repeatedly withdrawn from the legal propositions embraced in his instructions and directed to a matter entirely foreign to them—the credibility of his own testimony. And this is aside from the question of the legality of these modifications, where, for example, the jury are told that if the defendant had in the past made false representations to Norine Schneider regarding his wealth and social standing it was their duty to consider these facts in determining his credibility as a witness in this case. Section 1847 of the Code of Civil Procedure declares that a witness is presumed to speak the truth, but that this presumption may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility. Section 2061 of the same code declares that a witness false in one part of his testimony is to be distrusted in others. Sections 2051 and 2052 of the same code provide the method of impeachment. These code provisions certainly embody all that is necessary for a court to say for the enlightenment of the jury upon these matters. However this may be, it certainly deprives the defendant of the impartial consideration to which his defense is entitled if his testimony, his conduct, and his acts, are singled out and the jury are repeatedly and re-repeatedly told that they must be regarded in determining his credibility.

To defendant's proposed instructions 14, 14a, and 14b the court made a lengthy hypothetical addition. It may be noted in passing that it did not here caution the jury that they were not to assume the existence or non-existence of any of the facts therein stated, but we think that the modification could have served only to trouble and confuse the jury. In contemplation of a new trial it should be said that if the court meant to instruct the jury that although the marriage between the parties might be valid and not the subject of annulment because of any deceit practiced by defendant in its procurement, still if Norine Schneider was induced to change her condition from that of an unmarried woman to that of a mar-

ried woman by reason of the deceit, and would not otherwise have done so, that element of the crime—to wit, deceit—under section 474 of the Penal Code, was established,—this as a proposition of law is correct, but it could have been couched in simpler form than that chosen.

For the foregoing reasons the judgment and order appealed from are reversed and the cause remanded for a new trial.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.