[Crim. No. 168.　Second Appellate District.—November 3, 1910.]

## THE PEOPLE, Respondent, v. W. J. DANFORD, Appellant.

CRIMINAL LAW—FORGED TELEGRAM—INTENT TO DEFRAUD—SECURITY ON
WORTHLESS BOND—REPLY TO TELEGRAM NOT DELIVERED—SUPPORT
OF VERDICT.—Upon the trial of a prosecution for delivering a forged
telegram to C. J. O'Keefe with intent to deceive and defraud him,
where the evidence shows that defendant had in his possession a
bond for $5,000 purporting to be issued by a Colorado corporation
of Telluride, Colorado, upon which he wished to negotiate a loan of
$1,000 from O'Keefe, and shows that there was no such corporation
and said bond was worthless, but that O'Keefe was induced to
sign a telegram to the First National Bank of Telluride, inquiring
as to said bond, which was delivered to defendant to be forwarded,
but was not forwarded, and the forged reply was dated at Tellu-
ride and purported to be signed by "L. E. Brown, Cashier," and
stated that "bond inquired about will be redeemed at par 5000
dollars and interest at maturity," it is held that the evidence fully
sustains the verdict of guilty as charged.

ID.—DEFENSE OF FALSE IMPERSONATION BY CLIENT—PROVINCE OF JURY
—KNOWLEDGE OF FORGERY.—Where the only defense attempted was
that the bond belonged to a client, one Jeffry Ryan, who wished the
matter to appear in the attorney's name, and that he personated the
defendant and forged the telegram, it is held that, as no such per-
son appeared at the trial, and as it was not made to appear that any-
one other than defendant had ever seen or heard of such person,
the jury was authorized to discredit his testimony, and that, elim-
inating his evidence, there can be no question but what the testi-
mony justified the jury in finding that when defendant delivered the
forged telegram to O'Keefe, he knew that the same was forged,
and was not a telegraph message received from a telegraph office,
and that he committed the act with intent to deceive and defraud
O'Keefe of his money.

ID.—DISCOVERY OF FRAUD BY PROSECUTING WITNESS—ABSENCE OF IN-
JURY IMMATERIAL.—The fact that O'Keefe discovered the fraud
by inquiry made at the telegraph office, from which he learned
that his telegram had never been sent, and that no telegram was
received thereat from Telluride, Colorado, addressed to him, and
that he thereafter withheld his money and suffered no injury, is
immaterial, and cannot affect the verdict of guilty of the charge
of willfully delivering a forged telegram with the intent to de-
ceive and defraud him.

ID.—INSUFFICIENT CHALLENGE TO PANEL OF JURORS—FAILURE TO SUM-
MON FROM SMALL TOWNSHIP—DIRECTORY PROVISION—DISCRETION
NOT ABUSED.—It is not of itself a sufficient ground for challenge

to the panel of the jurors that there is one small township of twenty-five inhabitants from which no jurors were drawn. Section 206 does not provide that jurors shall be summoned from every ward and township, but its provisions are directory to the superior judges, and, in the absence of a showing of an abuse of their discretion in making the estimates for jurors to be drawn from the various townships, their selection will not be disturbed.

ID.—SECOND COUNT IN INDICTMENT—ATTEMPT TO OBTAIN MONEY BY FALSE PRETENSES—SAME ACT AND TRANSACTION—DEMURRER PROPERLY OVERRULED.—Where, besides the charge on which defendant was convicted, there is a second count in the complaint relating to the same act and transaction, charging the offense of attempting to obtain money by false and fraudulent representations, such second count will not sustain a demurrer to the information on the ground that it states more than one offense. Section 954 of the Penal Code provides for separate counts, stating distinct offenses, when they "relate to the same act, transaction, or event."

ID.—GENERAL MOTION TO SET ASIDE INFORMATION PROPERLY DENIED—COMMITMENT ON FIRST COUNT—WANT OF COMMITMENT ON SECOND COUNT.—A general motion to set aside the information for want of legal commitment was properly denied, where there was a legal commitment on the first count, and no commitment on the second count. To be effective, the motion should have been addressed to the second count only.

ID.—MOTION OF DISTRICT ATTORNEY TO DISMISS SECOND COUNT—SURPLUSAGE.—The court properly granted a subsequent motion of the district attorney to dismiss the second count. As it was unwarranted by the commitment of the magistrate, it was properly dismissed as being mere surplusage. The accused could not be prejudiced by the granting of such motion.

ID.—PLEA TO FIRST COUNT UNAFFECTED.—The plea of the defendant to the first count, on which he was lawfully committed, was unaffected by the dismissal of the second count. Such dismissal was not an amendment of the information, but merely in the nature of an election to proceed only on the first count thereof.

ID.—SUFFICIENCY OF INFORMATION—CHARGE IN LANGUAGE OF STATUTE—EXTRINSIC MATTER SHOWING MODE OF DECEIT.—An information charging the offense in the language of the statute was sufficient. It was not required to allege extrinsic matter showing in what manner the forged message deceived the complaining witness.

ID.—IMMATERIAL VARIANCE BETWEEN FORGED TELEGRAM ALLEGED AND PROVED—PRINTED RULES.—Where the writing on the forged telegram alleged and that proved is identically the same, there is no substantial variance because the forged telegram was in fact on a printed blank containing the rules and conditions on which the telegraph company receives and transmits telegraphic messages. In

no event were the rights of the defendant prejudiced by such wholly immaterial evidence.

ID.—EVIDENCE—TELEGRAM OF PROSECUTING WITNESS—INTERCEPTION BY DEFENDANT BY TELEPHONE—CIRCUMSTANTIAL PROOF.—Where the telegram signed by the prosecuting witness addressed to Bank of Telluride, and to be charged to defendant, was intercepted at the telegraph office by telephone with directions to the telegraph office to send it to defendant's office for correction, and was never sent to its address, evidence was admissible to show by circumstantial evidence that defendant was the intercepting agent.

ID.—RULING OF COURT UPON EVIDENCE WITH ALLOWANCE OF EXCEPTION NOT MISCONDUCT.—A ruling of the court upon evidence allowed to be introduced by the district attorney over the objection of the defendant, who assigned prejudice, and a statement by the court that that was for the supreme court, "You take your exception to the adverse ruling, and you have your record made," was not misconduct on the part of the court.

ID.—TRIVIAL MISCONDUCT OF DISTRICT ATTORNEY—CORRECTION BY COURT. Alleged misconduct of the district attorney which was trivial, and which was absolutely corrected by the court, was without prejudice.

ID.—ERROR IN REFUSED INSTRUCTIONS NOT PREJUDICIAL.—Where requested instructions were refused, the refusal was without prejudicial error, where the points included therein were fully covered by other instructions given by the court.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from orders denying a new trial and refusing to set aside the information. George R. Davis, Judge.

The facts are stated in the opinion of the court.

Grove L. Walter, L. L. Cardwell, and W. J. Danford, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Defendant was convicted upon an information charging him with willfully delivering to another a message falsely purporting to have been received by telegraph, knowing the same to be false, and with the intent to injure and deceive the one to whom it was delivered. The information was as follows:

"The said W. J. Danford is accused by the district attorney of and for the county of Los Angeles, state of California, by this information, of a felony committed as follows: That the said W. J. Danford on the 23d day of December, 1909, at and in the county of Los Angeles, state of California, did willfully, unlawfully, feloniously, knowingly, and with intent to deceive, injure and defraud one C. J. O'Keefe, deliver and cause to be delivered to C. J. O'Keefe a certain false and forged message, which said false and forged message is in the following words and figures, to wit:

" 'Dated Telluride, Colo., Dec. 22, 09.
" 'To C. J. O'Keefe,
        " 'Los Angeles, Calif.
    " 'Bonds inquired about will be redeemed at par 5,000 dollars and interest upon maturity, May, 1910.
                              " 'I. E. BROWN,
                                    " 'Cashier.'

"And which said false and forged message then and there falsely purported to have been received by telegraph and from a telegraph office and from one I. E. Brown, cashier; that in truth and in fact the said message was false and forged, and had not been received by telegraph, and had not been received from any telegraph office, and had not been received from I. E. Brown, cashier; and that he, the said W. J. Danford, then and there well knew that said message was false and forged and had not been received by telegraph, and had not been received from any telegraph office, and had not been received from I. E. Brown, cashier.

"Contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the people of the state of California."

A number of alleged errors are assigned as grounds for reversal, among which it is urged that the verdict is not justified by the evidence.

1. The evidence tended to show that the defendant, who was at the time engaged in the practice of law in the city of Los Angeles, had in his possession a $5,000 bond, which purported to have been issued by the San Miguel Gas, Light and Power Corporation of Telluride, Colorado; that defendant desired to negotiate a loan of $1,000 upon this bond as security, and to that end called upon C. J. O'Keefe, the complaining witness, in said city of Los Angeles. In the course of the conversation,

defendant gave to O'Keefe the names of certain alleged bond brokers in Denver, and suggested that he (O'Keefe) wire them as to the value of the bond. On the day following O'Keefe called at defendant's office, where, at O'Keefe's suggestion, it was arranged that a telegram signed by him (O'Keefe) should be sent to the First National Bank, Telluride, Colorado, the expense thereof to be borne by defendant. Thereupon, a telegram was prepared as follows:

"First National Bank,
        "Telluride, Colo.

"Please advise as to value of five thousand dollar bond, No. 32, Series A, issued by San Miguel Gas, Light & Power Corporation, of date May first, 1900, due 1910, signed by E. W. Weed, Prest., and Jas. Herman, Secty., and is same likely to be paid when due.
                        "(Signed)    C. J. O'KEEFE."  .

Defendant telephoned for a messenger boy, and after writing upon the telegraphic blank containing the message that the expense of transmitting the message was to be charged to him and the answer delivered at his office, gave it to the messenger, who delivered it to the Western Union Telegraph office. Shortly after this message was delivered to said office, someone claiming to be and who gave the name of defendant, 'phoned the telegraph office, advising them not to transmit the message, but to return it to defendant's office. Pursuant to such instructions, the message was not transmitted, but the same was returned to the office of defendant and delivered to him. On the following day O'Keefe called at defendant's office, in response to a 'phone call from defendant, at which time defendant gave him what purported to be a reply to the message which O'Keefe had written and which he supposed had been transmitted to the First National Bank, Telluride, Colorado. This reply was inclosed in a sealed envelope of the Western Union Telegraph Company and addressed to C. J. O'Keefe. It contained a telegram in the words and figures following:

                "Dated Telluride, Colo., December 22, 09.
"To C. J. O'Keefe, Los Angeles, Calif.

"Bond inquired about will be redeemed at par, 5000 dollars and interest, upon maturity, May, 1910.
                        "(Signed)    I. E. BROWN,
                                "Cashier."

O'Keefe at the time believed the message to be genuine and sent in reply to the one prepared by him, which he supposed had been transmitted. Nevertheless, he later made some inquiry at the telegraph office and learned that no such message had been received or delivered through the Western Union Telegraph office. It further appeared at the trial that I. E. Brown, whose name purported to be signed to the telegram, never signed the same, that the bond was valueless, and that there was no such corporation as San Miguel Gas, Light and Power Company of Telluride. O'Keefe did not make the loan and sustained no loss or injury by reason of the alleged deception.

Appellant made no attempt to controvert these facts, but based his defense upon the claim that he was an innocent victim of another, one Jeffrey Ryan, who, as a client, employed the defendant to negotiate a loan for him upon the bond, assigning certain reasons for not being known in the transaction himself. The testimony of defendant and the inferences to be drawn therefrom are, in effect, that Ryan personated defendant in intercepting and by telephone recalling the message signed by O'Keefe and addressed to the First National Bank at Telluride, and that Ryan forged the telegram made the basis of the prosecution and gave it to defendant, claiming that it had been delivered at defendant's office in the absence of the latter and received by Ryan, who left it with defendant for delivery to O'Keefe; that defendant, believing it to be genuine and in answer to O'Keefe's telegram to the First National Bank, gave it to him when he went to defendant's office in response to a telephone call requesting him to do so. Ryan did not appear at the trial, nor was it made to appear that anyone other than defendant had ever seen or heard of such a person. Evidently the jury did not believe the defendant to be the victim, as he claimed, of Jeffrey Ryan, and, as they had a right to do, discredited his testimony in this regard. Eliminating his explanation, there can be no question but that the testimony justified the finding of the jury that at the time defendant delivered the message to O'Keefe he knew the same was forged and was not a telegraph message received from a telegraph office, and that he committed the act with the intent to deceive and defraud O'Keefe of his money. Indeed, it is im-

possible to conceive of the jury reaching a verdict other than that of guilty. The fact that O'Keefe subsequently learned the true facts and did not part with his money is immaterial. (*People* v. *Chadwick*, 143 Cal. 116, [76 Pac. 884].)

2. Defendant interposed a challenge to the panel of jurors; the court denied the challenge and appellant assigns the ruling as error. One of the grounds of the challenge, and the only one now urged by appellant, is that in selecting the names of jurors suitable and competent to serve as jurors, the statute (Code Civ. Proc., sec. 206) requires that such lists shall be selected from the different wards or townships of the respective counties in proportion to the number of inhabitants therein, as nearly as the same can be estimated by the persons making such lists. The record discloses that at the time the list of jurors were selected Catalina township, in said county, contained twenty-five inhabitants competent and in every way qualified to act as jurors in the trial of cases in the superior court of said county during the ensuing year, but that no one of the twenty-five inhabitants of said township was selected and included in said list of jurors. In our judgment, such fact, standing alone, affords no just ground for challenge. The section (Code Civ. Proc., sec. 206) does not require jurors to be selected from every ward and township in the county, but from the different wards and townships therein, the total number of jurors required to be apportioned in accordance with the estimated number of inhabitants in each ward or township, as nearly as the same may be estimated. Whether or not the number of inhabitants of Catalina township, when compared with the number of inhabitants in the other townships of the county, was sufficiently large to entitle it to representation on the jury list, is not made to appear. Conceding such fact, however, to have been established, nevertheless, it cannot be said the persons (in this case, a majority of the judges of the superior court) whose duty it was to make the lists of the names of jurors failed to select them from the different townships in proportion to the number of inhabitants therein, as nearly as such persons could estimate the same. In our judgment, the provision of the section in this regard is directory, and, in the absence of an abuse of discretion in making such estimate, the action of those whose duty it was to make the

selection should not be disturbed. No such abuse is made to appear, and there was no error in denying defendant's challenge. (*People* v. *Durrant,* 116 Cal. 194, [48 Pac. 75].)

3. In addition to charging the defendant with the offense of which he was convicted, the information, by a second count, as it was originally filed, charged him with another offense, that "of attempting to obtain money by false and fraudulent representations and pretenses," which was based upon the same act and transaction set forth in the first count. A demurrer interposed to the information upon the ground that it stated more than one offense was overruled. There was no error in this ruling. Section 954, Penal Code, provides that "the . . . information may charge different offenses, . . . under separate counts, but they must all relate to the same act, transaction, or event. . . . " Both counts in stating the offense with which defendant was charged related to and were predicated upon the same act and transaction, and, hence, the information was not subject to demurrer upon the ground specified. (Pen. Code, sec. 1004.) The case of *People* v. *Clement* (Cal.), 35 Pac. 1022, has no application, for the reason that section 954, Penal Code, as it stood prior to the amendment of 1905, provided that the information should charge but one offense.

4. Defendant also made a motion to set aside the information upon the ground that he had not been legally committed by a magistrate, which motion was denied. It appears that in the affidavit of complaint filed with the justice of the peace defendant was charged with a violation of section 474, Penal Code, as set forth in the first count of the information, and for which offense only he was by the magistrate committed; hence, it must be conceded the district attorney had no power to charge defendant with the offense specified in the second count thereof. (*People* v. *Nogiri,* 142 Cal. 596, [76 Pac. 490].) The charge set forth in the first count, however, was not subject to this infirmity and therefore was not subject to the objection. To be effective the motion should, in our judgment, have been directed to the second count alone, and not to the entire information. Moreover, conceding the ruling to have been erroneous, it clearly appears that defendant's substantial rights were not prejudiced thereby, for the reason that, at the commencement of the trial, the district

attorney moved the court to dismiss the second count, which motion was by the court, over defendant's objection, granted.

5. There was no error in granting the motion to dismiss the second count. As the charge set forth therein was unwarranted by the commitment of the magistrate, it was mere surplusage and had no proper place in the information. "When a sufficient information charging the offense for which he stood committed remained, the accused could in no sense be injured by the action of the district attorney or the court in striking out such surplusage." (*Ex parte Danford,* 13 Cal. App. 741, [110 Pac. 692]; *Commonwealth* v. *Tuck,* 20 Pick. (Mass.) 356.) The dismissal was not an amendment, but in the nature of an election to proceed against defendant for the offense charged in the remaining count alone. (*Wooster* v. *State,* 55 Ala. 217.) Even had the offense charged in the second count been authorized by the commitment, defendant would not be in a position to complain that he was relieved from prosecution thereon. His rights could not be prejudiced by such action.

6. Neither is there any merit in appellant's contention that the dismissal after plea had been entered left the case without issue joined. Defendant's plea of not guilty put in issue every material allegation of the information. (Pen. Code, sec. 1019.) The allegations of the first count were complete and in no wise dependent upon those contained in the second. The plea of not guilty to the allegations stating the offense for which defendant was committed was not affected by the dismissal. (*Ex parte Danford,* 13 Cal. App. 741, [110 Pac. 692].)

7. Appellant further contends that the information is fatally defective by reason of the fact that it does not contain averments of extrinsic matter showing in what manner the forged message deceived the complaining witness. An answer to this contention is, that the information charged the offense in the language of the statute, and in *People* v. *Chadwick,* 143 Cal. 116, [76 Pac. 884], involving a like offense, this was held sufficient, the court saying: "The information charges in the language of the section, and it cannot be said that the instrument, if genuine, would not have efficacy to, or that it could not, injure, defraud, or deceive."

8. It is insisted there was a variance between the telegram offered in evidence and the forged message set out in the information. The record discloses no basis for such contention. The copy of the telegram set out in the information was identical with that offered in evidence. In addition to the message, however, there was read in evidence, without objection on the part of defendant, the printed rules and conditions of the telegraph company under which it receives and transmits telegraphic messages. In no event, conceding the alleged error, were the rights of defendant prejudiced by such wholly immaterial evidence.

9. A line of testimony was introduced, over defendant's objection, tending to show that a short time after the telegram signed by O'Keefe had been received at the telegraph office, defendant by telephoning to the office intercepted it and caused the message to be returned to him at his office. It is insisted that such evidence was erroneously admitted, for the reason that the employees of the telegraph office with whom the conversation was had over the telephone did not recognize defendant, and could not say that it was defendant who ordered the sending of the telegram stopped and returned to his office for correction. While there was no direct evidence that defendant was the person who gave the instructions, the circumstances disclosed by the record strongly point to him as the person who described the telegram as one signed by O'Keefe, addressed to the bank at Telluride, Colorado, marked ''Charge W. J. Danford,'' and ordered it returned to him for correction, and it was so returned. There can be no doubt as to the admissibility of such line of testimony. The fact in dispute was susceptible of proof by circumstantial evidence.

10. Appellant insists that the court was guilty of misconduct whereby his rights were prejudiced. During the trial, and in response to defendant's objection to a question asked by the district attorney, the court said: ''Upon the avowal (of the district attorney that the fact sought to be proven) will be connected and corroborated by circumstances, the objection will be overruled.'' Whereupon, defendant said: ''I desire to assign here prejudicial error.'' The court then said: ''That is for the supreme court to say. You take your exception to the adverse ruling, and you have your record

made.'' It is apparent from the above statement of the proceedings that the remark of the court was prompted by a desire on its part to aid defendant's attorney in obtaining a proper record for review on appeal, by suggesting that he except to the ruling of the court in admitting the evidence, rather than to assign it as prejudicial error. In no sense can the statement made by the court be regarded as misconduct.

11. A number of assignments of error are predicated upon the alleged misconduct of the district attorney, all of which, after careful examination, are found to be of such a trivial character as to merit no discussion. Moreover, the court, of its own motion, instructed the jury that they should disregard what defendant considered offensive and prejudicial action on the part of the district attorney. Suffice it to say that, in view of the evidence, it clearly appears that the verdict of the jury could in no wise have been controlled or affected by the alleged misconduct.

12. Defendant requested the court to give to the jury an instruction as follows: ''If you believe from the evidence that the defendant did not know the contents of the envelope, namely, defendant's exhibit 'B' (the alleged forged telegram), which complaining witness testified that the defendant delivered to him, before or at the time of delivering it, you must find the defendant not guilty''.; which instruction, and others of like tenor, the court refused to give. Conceding the instruction to have been a correct statement, of the law, there was no error in the ruling, for the reason that the substance of this requested instruction was fully covered by other instructions, in one of which the jury were instructed that, in order to justify conviction, they must find beyond a reasonable doubt that ''the defendant, with intent to deceive, injure and defraud the said C. J. O'Keefe, did, as charged, willfully and knowingly deliver or cause to be delivered to said O'Keefe the certain message so as aforesaid set forth and described in the information; and further believe from the evidence, beyond a reasonable doubt, that such message was false and forged, and falsely purported to have been received by telegraph, and from a telegraph office, and from the said I. E. Brown, cashier, as alleged in said count of the information, but that, in truth and in fact, it had not

been received by telegraph, nor from a telegraph office, nor from the said I. E. Brown, cashier; *and further believe from the evidence, beyond a reasonable doubt, that the said defendant, at the time, well knew the said message was so false and forged, and had not been received by telegraph, nor from a telegraph office, nor from said I. E. Brown, cashier."* There were others of like import, from all of which it clearly appears that the jury were fully and fairly instructed upon the points covered by the instructions offered by defendant and which the court refused to give.

Other alleged errors are without sufficient merit to justify consideration. It appears from the entire record that defendant was accorded a full and fair trial. The evidence is ample to justify the verdict. No defect or error appears either in the information, the trial, or the proceedings therein which could have prejudiced the substantial rights of defendant. (Pen. Code, secs. 960, 1258, 1404.)

The judgment and orders appealed from are, therefore, affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1910.