[Crim. No. 1339. First Appellate District, Division One.—December 7, 1926.]

THE PEOPLE, Respondent, v. RONALD M. BATEMAN, Appellant.

[1] CRIMINAL LAW—ROBBERY — CONFESSION—VOLUNTARY CHARACTER —EVIDENCE—SUBSEQUENT CONFLICT.—In a prosecution for robbery, where preliminary testimony is introduced showing that the confession of defendant was freely and voluntarily made, without threat of violence or promise of reward or immunity from punishment, and, after defendant is given an opportunity to show that the confession was involuntary, but no offer is made or permission asked to call any witness, the confession is read in evidence, the trial court is not required to strike such confession from the record and take it from the consideration of the jury, where, subsequently, after the prosecution has rested, witnesses for defendant testify as to promises made to defendant before he was taken to the district attorney's office where he made the confession received in evidence.

[2] ID.—PROVINCE OF COURT AND JURY.—Where it is sought to introduce a confession of a defendant in evidence, the court is called upon primarily to pass upon the question of fact as to whether the confession was freely and voluntarily made, and it is for the jury to determine ultimately whether it was so made and therefore entitled to consideration.

---

1. See 8 Cal. Jur. 116.
2. See 8 Cal. Jur. 116, 117; 1 R. C. L. 577.

[3] ID.—PRELIMINARY PROOF—LATER CONFLICT—CREDIBILITY OF WIT-
NESSES.—In this prosecution for robbery, the witness who had
taken down defendant's confession in shorthand having testified
that the statement was made freely and voluntarily and that no
reward or immunity from punishment had been granted, that de-
fendant understood that the statement would be used against
him in the future at any trial, and that no one had threatened
him in any way, and the preliminary questions and answers on
the taking of the confession having been to like effect, the foun-
dation laid was sufficient to admit the confession, and, having
been admitted, the conflict in the evidence which developed later
presented a question of credibility, and it was for the jury to
determine whether the confession was freely and voluntarily
made and whether it was or was not true.

[4] ID.—TRUTH OF TESTIMONY — CONFLICTING EVIDENCE — APPEAL.—
In such prosecution, whether defendant told the truth when, in
making his confession, he stated that · no inducement had been
held out to him or whether the testimony of the witnesses who
testified to promises having been made prior to defendant's go-
ing to the office of the district attorney was correct was a ques-
tion of fact; and on the question of the admissibility of a con-
fession, where the evidence is conflicting, the appellate court will
uphold the decision if there is substantial evidence to support it.

[5] ID.—CROSS-EXAMINATION OF DEFENDANT—TRUTH OF CONFESSION.
In such prosecution, defendant having taken the stand in his own
behalf and testified that he was at home at the time of the rob-
bery, and he having further testified that he had given the
answers to the questions in his confession as detailed by the wit-
ness who had taken down defendant's confession in shorthand, it
was not error to permit the district attorney, on cross-examina-
tion, to question defendant as to whether the statements he made
and which were taken down in shorthand were true, to which de-
fendant answered in the affirmative.

[6] ID.—EXTRAJUDICIAL UTTERINGS—LEGAL SAFEGUARDS—VOLUNTARY
CHARACTER—EVIDENCE—PROVINCE OF JURY.—Our law has cast
about the guiltiest prisoner the greatest safeguards to protect
him from being convicted on his own extrajudicial utterances,
and if it appears that a confession is induced by any promise
of immunity or leniency the court will reject such alleged con-
fession as not voluntary and will refuse to listen to statements
thus elicited; but where the only preliminary proof before the ·
trial court is that the confession was freely and voluntarily
made and without any hope of reward or inducement of any
character and that no one had threatened or intimidated defend-

6. See 8 Cal. Jur. 116.

ant in any way, the confession is properly admitted in evidence, and any subsequent dispute as to its voluntary character and as to its verity becomes a question for the jury.

(1) 16 C. J., p. 734, n. 20. (2) 16 C. J., p. 926, n. 67, p. 927, n. 69. (3) 16 C. J., p. 734, n. 20, p. 927, n. 70, 71. (4) 16 C. J., p. 588, n. 9, p. 853, n. 96; 17 C. J., p. 264, n. 89. (5) 16 C. J., p. 717, n. 39; 40 Cyc., p. 2481, n. 64, p. 2714, n. 93. (6) 16 C. J., p. 717, n. 39, p. 734, n. 20, p. 927, n. 69, 71; 34 Cyc., p. 1808, n. 78.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cormac, Bolles & Surr for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell for Respondent.

CAMPBELL, J., *pro tem.*—The defendant Ronald M. Bateman and one Claude Brooks were jointly charged with the crime of robbery and convicted. The defendant Brooks did not appeal. The trial court having denied defendant Bateman's motion for a new trial, he has taken an appeal to this court from such order denying him a new trial and from the judgment of conviction, and the grounds of such appeal are as follows:

1. It is claimed for defendant that the trial court erred in admitting over his objection a confession which was not freely and voluntarily made; 2. In denying his motion to strike out such confession, and 3. That there is no evidence outside of the purported confession which indicates any connection on defendant's part with the crime charged.

On the evening of January 2, 1926, a Mutual Creamery store, located at 2716 East Fourteenth Street in the city of Oakland, was robbed. The defendant Brooks, dressed in a brown overcoat and a gray fedora hat, entered the store in question, threatened the manager, Mary Hey, with a 38-caliber revolver, and took approximately $14 from the cash register. The manager followed defendant Brooks to the door and saw two people in a Ford coupe, which had been standing about ten or fifteen feet from the store, drive away.

Subsequently, on the eighteenth day of January, a police officer of the city of Oakland noticed a Ford coupe parked on an Oakland Street without a license plate on the rear of the car. A search of the coupe revealed a box of 32-caliber cartridges and a box of 38-caliber cartridges, together with certain other articles, including a holster, an overcoat, five hats, and two caps. Within a short space of time the two defendants came up to the machine and were questioned by the officer. Upon being asked to produce credentials the defendant Brooks attempted to draw a 32-caliber revolver. The revolver was knocked from his hand and handcuffs were placed upon both defendants. The proof further established that defendant Brooks had traded in the 38-caliber revolver used in the robbery for the 32-caliber revolver which was found on him at the time of the arrest of the defendants. The defendant Bateman stated that he was the owner of the Ford coupe and the hats found therein. One of these hats, a gray fedora, bore the initials R. M. B. and was identified as the hat that defendant Brooks wore at the time the Mutual Creamery store was robbed. A clerk in another Mutual Creamery store in Oakland testified that she saw the defendants together in her store on the 21st of December, 1925; that there was a Ford coupe parked in the vicinity of the store, and that she saw defendants get into it and drive away; that the Ford coupe had no license plate upon the rear. In addition to the direct and circumstantial evidence there was introduced in evidence a complete confession of the robbery in question made by each of the defendants.

Upon the question of whether or not the confession of the defendant Bateman was voluntary James L. Meegan testified that he was present at a conversation held with the defendants in the office of the prosecuting attorney in the city of Oakland on January 19, 1926, and that he took notes of that conversation in shorthand; that no hope of reward or immunity from punishment was held out to induce the defendant to make a statement, and that no force or violence, threat, duress, or intimidation was used to compel the defendant to make a statement. In fact, the confession itself shows that the defendant in making it expected to receive no favors of any character, as will be seen from the preliminary questions asked and the answers given by the defendant in his confession preceding his acknowledgment of guilt:

"Q. You know Inspectors Sanderson and Goodwin, Captain McSorley, your brother, you understand who I am, my name is Fred L. Donahue, Deputy District Attorney, and the one taking the shorthand notes is Mr. Meegan. Now, Mr. Bateman, first we have before us a report, police report dated January 2nd, 1926, of what purports to be a report of a hold-up at a Mutual Creamery store, 2716 East 14th Street in the City of Oakland, at about 7 o'clock p. m. in the evening. We have this report before us. We have read it and you are now here in custody of the officers and you know what the inquiry is going to be, do you not? A. Yes. Q. Are you willing to make a statement in this matter at the present time? A. Yes. Q. And when you make your statement are you going to make it freely and voluntarily? A. Yes. Q. Tell us the truth? A. Yes. Q. And no reward or immunity from punishment has been granted you? A. No, sir. Q. And in making this statement if you implicate anyone else than yourself, you are going to tell the absolute truth, nothing but the truth, is that right, and the whole truth, is that right? A. That is right. Q. Now, you have listened to considerable talk about this matter and as I have stated, you know exactly in your own mind what you are going to tell us, and inasmuch as you have no counsel to advise you, we want to inform you now and instruct you to give this matter full consideration, that it is a serious matter, and once again I want to say to you whatever you say, tell us the truth. You understand, Mr. Bateman, that when you give this statement, that this statement will be used against you in the future at any trial or preliminary examination. You understand that? A. I understand that, yes, sir. Q. Now you can make your statement, and I might state this, that in making your statement, nobody has threatened you with any violence, nor intimidated you in any way or otherwise? A. No, sir. Q. Make your statement in your own way."

[1] When the question of the admissibility of the confession was before the court and the witness Meegan, who had taken down the confession in shorthand, had testified that the statement was made freely and voluntarily and that no reward or immunity from punishment had been granted to the defendant; that he understood that the statement would be used against him in the future at any trial and that no one

had threatened him in any way, the court, in overruling the objection, stated to the defendant's counsel: "Now, if you claim the statement is involuntary, of course I will give you an opportunity of showing that." No offer was made or permission asked to call any witnesses, and the confession was read in evidence. Subsequently, however, after the prosecution had rested, the defendant called several witnesses who testified as to promises made to the defendant before he was taken to the district attorney's office, where he made the confession received in evidence. Appellant claims that upon this evidence being given the trial court should have stricken the confession from the record and taken it from the consideration of the jury. If this were the law it would lie within the power of the defendant to clear from the case all confessions by his own evidence or such evidence as he might produce and this regardless of the truth of such testimony. [2] Where it is sought to introduce a confession of a defendant in evidence the court is called upon primarily to pass upon the question of fact as to whether the confession was freely and voluntarily made, and it is for the jury to determine ultimately whether it was so made and therefore entitled to consideration. (*People* v. *Oliveria*, 127 Cal. 376, 381 [59 Pac. 772]; *People* v. *Thompson*, 145 Cal. 717, 725 [79 Pac. 435].)

[3] The foundation laid was sufficient to admit the confession, and, having been admitted, the conflict in the evidence which developed later presented a question of credibility, and it was for the jury to determine whether the confession was freely and voluntarily made and whether it was or was not true (*People* v. *Burns*, 27 Cal. App. 227, 235 [149 Pac. 605]). On this issue the court instructed the jury as follows: "The defendant Bateman has introduced testimony to establish the fact that such alleged statement or confession was not voluntary, and was not therefore admissible as testimony in this case. You are instructed that the action on the part of the Court in admitting such alleged statement or confession into evidence does not bind you to accept the Court's conclusion. Whether such alleged confession or statement, if made, was voluntary or not is for you to decide. If you conclude that it was not made voluntarily, or was made under threats, or violence, or because of promises or improper inducements, then you have the

right to, and it is your duty to disregard the alleged statement or confession altogether.''

[4]  The deputy district attorney emphatically stated to defendant Bateman that his confession would be used at his trial or preliminary examination, and defendant replied that he understood that, and no promise of any kind had been made to him.  As to whether he told the truth when he made his confession that no inducement had been held out to him or whether the testimony of the witnesses who testified to promises having been made prior to defendant's going to the office of the district attorney is correct, is a question of fact, and on the question of the admissibility of a confession where the evidence is conflicting it is subject to the universal rule applicable to cases on appeal that the reviewing court will uphold the decision, if there is substantial evidence to support it (*People* v. *Fowler,* 178 Cal. 657, 662 [174 Pac. 892]).

The defendant Brooks also made a confession in the presence of the defendant Bateman which was likewise taken down in shorthand by the witness Meegan.  No objection is urged on appeal that the statement of defendant Brooks was not admissible, although it is argued that the statement is in no way binding upon the defendant Bateman.  On this question the court instructed the jury specifically as follows:

''You are instructed that the alleged confession claimed to have been made by the defendant, Claude Brooks, is admitted only as against the defendant, Claude Brooks, and you are admonished that, as the Court instructed you at the time of the admission of the said alleged confession, you are to absolutely disregard it so far as the defendant Ronald M. Bateman is concerned.''

Reference is also made in the confession of defendant Brooks to other robberies, but it was conceded by counsel for appellant at the trial that the different transactions related in the confession are so interwoven that it is impossible to separate the portion which deals with the particular robbery under investigation.

[5]  Defendant Bateman took the stand in his own behalf and testified that he was at home at the time of the robbery. He further testified that he had given the answers to the questions in his confession as detailed by Mr. Meegan in his

testimony. On cross-examination the following questions were asked and answers given: "Q. By the way, these statements that you have made and which were taken down·in shorthand by Mr. Meegan were true, were they not? A. As far as I can recollect, yes, certainly. Q. Everything you told then was the truth, wasn't it? A. As well as I can remember at that time they were the truth, yes."

No objection was made to this evidence at the time of its reception into the record, but it is now claimed that by this cross-examination defendant was compelled to be a witness against himself. There can be no question but that the prosecution had the right to fully cross-examine the defendant as to all matters concerning which he was examined in chief (Pen. Code, sec. 1323), and in so doing show by his admissions that he had made statements contrary to those made upon his direct examination. If such admissions constitute a confession of guilt of the offense for which the defendant is on trial, such confession could not be used in the absence of proof of its having been voluntarily made (*People* v. *Clifton*, 186 Cal. 149 [198 Pac. 1065].) In the instant case the confession having been received in evidence and defendant having testified concerning the same subject matter on his direct examination, its use in the manner complained of was permissible.

[6] Counsel for appellant cites numerous California cases to the effect that our law has cast about the guiltiest prisoner the greatest safeguards to protect him from being convicted by his own extrajudicial utterances; that if it appears that a confession is induced by any promise of immunity or leniency the court will reject such alleged confession as not voluntary and will refuse to listen to statements thus elicited. We fully agree with counsel for appellant that the principle enunciated is the law of this state and is also the established rule in all other jurisdictions, but the question he presents was passed upon by the·trial court when the confession was offered, and as the only preliminary proof before the court at the time was that the confession was freely and voluntarily made and without any hope of reward or inducement of any character and that no one had threatened or intimidated the prisoner in any way, and that being so, the confession was properly admitted in

evidence, the dispute as to its voluntary character and as to its verity became a question for the jury.

It follows that the trial court did not err in admitting the confession in evidence, and it being properly admitted it was not error to refuse to strike it out.

As to the remaining point urged, that aside from the confession there is no evidence which indicates any connection on defendant's part with the crime charged, it is sufficient to say that, aside from the confession of the defendant, the record as a whole strongly indicates the defendant's guilt.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 4, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 3, 1927.