THE PEOPLE, Respondent, v. LEO G. CRYDER et al.,
Appellants.

Richard E. Erwin for Appellants.

Fred N. Howser, Attorney General, and John F. Hassler, Deputy Attorney General, for Respondent.

MOORE, P. J.—About 10:30 p.m. on October 29, 1947, defendants entered the café of Teresa Boggio in a remote quarter of Los Angeles city, purchased and drank beer and departed. Teresa then locked her doors which she refused to open ''a short time later'' when the men returned. Cryder thereupon gained entrance through the rear, grabbed and choked Mrs. Boggio. Although he made no demands, she screamed and escaped through the backdoor. Cryder's fingers marked her throat and she became very nervous and excited. When she called to her husband to get a gun, Cryder fled.

During the same evening defendants drove in Pope's 1936 sedan near the service station of Leo Rex, about one-half mile distant from the Boggio café. They circled the station three times and once Cryder walked by while Pope's car stood 125 feet from the station with its motor running. Later while Rex was visiting the Day Key Shop which adjoins the station, Cryder approached Rex and ordered him to return to his place of business. Thinking that Cryder held a gun in his pocket, as the latter lunged, Rex fired his own gun and Cryder fled. On returning to his station Rex found his wife holding up her hands pursuant to Pope's orders while the latter held a block of wood over her head. When she had attempted to escape, Pope had pushed her back. On Rex's demand, Pope dropped the wood and his captor turned him

over to the police who had arrived. On observing Cryder driving by in the sedan the officers gave chase with screaming siren and red lights. He led them for about three blocks when his car sideswiped another and ricocheted over to the curb. Having there arrested Cryder, they found an open pocket knife and a bent screwdriver on his person. The men were taken to a police station and questioned. Pope made a confession which was stenographically recorded and signed by him.

On November 19, 1947, an information was filed containing four counts and allegations of two prior convictions of Cryder. Counts I and II accused defendants of burglaries in that they entered both the Boggio café and the Rex gas station with intent to commit theft. Counts III and IV accused them of attempting by means of force and fear to rob Leo Rex and Mrs. Rex.

To such charges defendants pleaded not guilty and a jury trial ensued. On January 21, 1948, the jury returned verdicts of not guilty as to counts I and II and stated that they could not agree as to counts III and IV as to which a mistrial was declared. The cause having been reset for trial on February 19, 1948, an amended information in three counts charging felonies was on that day filed. Count I accused defendants of having attempted by means of force and fear to take personal property from the person and immediate presence of Mrs. Boggio. Counts II and III respectively accused them of having committed the same crime with reference to Mr. and Mrs. Rex. By the same information Cryder was charged with three prior felony convictions. Their motion to dismiss the amended information having been denied, pleas of not guilty were entered. Also, with respect to count I they pleaded "once in jeopardy." The trial was set for March 5, 1948, when, by reason of the illness of Mrs. Boggio, a continuance to March 23 was granted at the request of the prosecution. Again, on the latter date because of the absence of a material witness, the trial was continued to April 1. A jury, having been then empaneled and trial had, returned verdicts of guilty as charged. Both men were duly sentenced to state prison for the terms prescribed by law, sentences to run concurrently. Their motion for a new trial having been denied they appeal from the judgment and from the order denying such motion.

In their "Points relied upon" for reversal, appellants specify only four, to wit: (1) Error in denying their motion to dismiss count I under section 1382 of the Penal Code; (2) error in admitting evidence of Pope's confession over their

objection that it was not freely and voluntarily made; (3) error in refusing to give their requested instructions with respect to the admission of the confession; (4) errors in the court's abuse of discretion, resulting in the denial of a fair trial.

## THE EVIDENCE SUFFICIENT

While the insufficiency of the evidence was not specified as ground for reversal, appellants have argued that the only evidence of any demands made by them upon their victims was the testimony of Mr. Rex that Cryder demanded that Rex "come back to the station with me; I want gas"; and Mrs. Rex's testimony that "as I ran back out again, Pope ran around to the door, had a club and he said 'Stand still; don't move.' That is all he said to me. . . . Then Cryder ran toward my husband. . . . I heard a gun shot, and I thought it was my husband . . . and I tried to get away but Pope wouldn't let me. He nudged me back inside." Such testimony taken with the entire evidence of the behavior of appellants is sufficient proof of an attempt to take something belonging to Mr. and Mrs. Rex. Cryder had choked Mrs. Boggio; he drove in a mysterious manner around the Rex station; left the automobile standing near by with motor running; demanded that Rex return to the station; held something in his pocket as though he held a gun; fled when Rex fired; fled when the officers captured Pope. The latter's conduct in holding a timber over the head of Mrs. Rex was itself an act from which the jury might reasonably have inferred that the men were attempting to steal from the station.

But the jury were not left to inferences only. Pope's confession left no room for doubt of the purpose of the men to rob. He declared that as he drove Cryder home from work the latter stated that he was going to "make some money tonight. I knew at this time we were going to stick up some place. We drank a pint of whiskey at Leo's . . . I let him drive. We then went to a few beer parlors and finally ended up at a café . . . Leo stated, 'If there is no one in this place we will take it' . . . While we were drinking the second beer Leo nudged me . . . and said, 'This is it.' We then went into the men's rest room and unbolted the rear door . . .we had a couple more beers and left the café.' Leo said, 'Wait here for me', and he went around in back of the café . . . It was at 99th and Main that we decided to hold up the gas station. Leo walked into the station ahead of me with his hand in his pocket. I followed Leo with a piece of 2 by 4

in my right front pocket. Leo said to the lady, 'This is it.' He then walked around to the rear of the station and I threatened the lady by keeping my hand in my pocket ... If she had made a move, I intended to hit her in the face with this piece of 2 by 4 ... I heard a shot and Leo ran. Two men came around from behind the station and pointed a gun at me.''

Having found the confession to be free and voluntary the jury justifiably inferred therefrom that appellants had attempted to rob both Mrs. Boggio and the Rex couple.

### Trial Was Within Time

Appellants contend that count I of the amended information should have been dismissed as required by section 1382 of the Penal Code. ■ It is true that an amendment to a pleading refers to the facts existing at the time of the commencement of the action (Black's Law Dict.) and is a writing proposed as a correction or an improvement of the original writing specified in the amendment. (*Couch* v. *Southern Methodist University* (Tex.Civ.App.) 290 S.W. 256, 260.) ■ Although a new and different cause of action may not be set up in an amended pleading (*Pagett* v. *Indemnity Insurance Co.*, 54 Cal.App.2d 646, 649 [129 P.2d 700]) yet the procedure provided specifically for amending an information or indictment is a complete answer to appellants' contention. The only inhibition against such amendments is found in the last sentence of the section which provides that an information cannot be so amended as to charge ''an offense not shown by the evidence taken at the preliminary examination.''
■ Such evidence is not before the court, but since no claim is made that Mrs. Boggio's testimony there varied materially from that given at the subsequent trial, it may be assumed that they were the same. (*People* v. *Thal*, 61 Cal.App. 48, 52 [214 P. 296].) Inasmuch as she testified that Cryder entered her place through the rear door after being denied entrance at the front and without words choked her, in view of Pope's confession it was a fair inference that he made such assault for the purpose of robbing. ■ In view of the inhibition against permitting the district attorney to amend an information by alleging an offense ''not shown by the evidence taken at the preliminary'' it is a fair construction that the Legislature intended that by an amended pleading he may allege any offense that was shown by such evidence. Section 1008 of the Penal Code authorizes an amendment by court order ''at any stage of the proceedings.''

With respect to their treatment of Mrs. Boggio appellants could have been held by the committing magistrate for either burglary or attempted robbery. They are distinct crimes although the same evidence might convict an accused person of both. After a mistrial had been declared on the original accusations of attempted robbery of Mr. and Mrs. Rex the amended information repeated those two offenses and charged appellants with the attempted robbery of Mrs. Boggio. The omission to include the crime of attempted robbery was not a barrier to the filing of an amendment to include all such crimes as might properly have been included in the original information. (*People* v. *Shutler,* 15 Cal.App.2d 704, 707 [59 P.2d 1050]; *People* v. *Tallman,* 27 Cal.2d 209, 213 [163 P.2d 857].)

It was therefore not error to deny appellants' motion to dismiss count I. The mistrial on January 21 started a new 60-day period. In *People* v. *Maupins,* 30 Cal.App. 392 [158 P. 502], the information was filed August 11, 1915. The case was set for August 20 and the trial was completed August 24 when a mistrial was declared. The case was reset for October 19 when the defendant moved for a dismissal pursuant to the Penal Code section 1382, on the ground that 60 days had elapsed since the filing of the original information. Because within the first 60 days after the filing of the information there had been a mistrial that event constituted "good cause" under section 1382 for denying the motion. In *People* v. *Chadwick,* 143 Cal. 116, 120 [76 P. 884], Justice Henshaw with full concurrence declared that the defendant "was not entitled to a dismissal when the delay was caused by a mistrial." (*Ex parte Ross,* 82 Cal. 109, 110 [22 P. 1086]; *People* v. *Maupins,* 30 Cal.App. 392, 394 [158 P. 502]; *In re Scott,* 81 Cal.App. 577, 578 [254 P. 596]; 16 Cal.L.Rev. 452.) In *In re Alpine,* 203 Cal. 731, 738 [265 P. 947, 58 A.L.R. 1500], the Supreme Court said: "[I]f the defendant was 'brought to trial' in the first instance within sixty days after the finding of the indictment or filing of the information the mandate of the law so far as section 1382 is concerned has been complied with." Since appellant was brought to trial within 60 days and a mistrial resulted as to two counts of burglary, compliance with section 1382 has been established.

Penal Code, section 1382, also provides that the prosecution must be dismissed "(1) When a person has been held to answer for a public offense and an information is not filed against him, within fifteen days thereafter." Appellant

contends that his motion to dismiss should have been granted under this section because "the preliminary hearing was held on November 5; 1947, and the Amended Information was .filed February 19, 1948." But appellant overlooks the fact that the first information was filed against him on November 19, 1947, within the 15-day limitation of the code section. The timely filing of the original information satisfied the requirement of the quoted section. The fact that a subsequent information was filed in no way prejudiced appellant. (*In re Alpine, supra*.)

## No Prejudice in Admitting the Confession

▓ The admissibility of a confession is a preliminary question for the court (*People* v. *Ferdinand,* 194 Cal 555, 567 [229 P. 341]), and when admitted it is for the jury to determine whether it was freely and voluntarily made. If they find that it was not, they must eliminate it from consideration. (*People* v. *Dye,* 119 Cal.App. 262, 270 [6 P.2d 313]; *People* v. *Bateman,* 80 Cal.App. 151, 156 [251 P. 335].) ▓ It is not contended that all the evidence with respect to the confession showed that force and threats were used to obtain the confession. On the contrary appellants merely assert that "there was certainly some evidence that undue force and violence were used upon the person of appellant Pope." The confession was assertedly made on October 28 while the condition testified to by the attorney who represented him was observed on November 5. No showing was made that he had not suffered an accident prior to his arrest or that he was not struck by a cellmate after the questioning. Also, while Pope denied having made the confession, he testified that he was forced to do so by the batteries of the police. Contrary to such evidence seven officers testified that neither promises of reward were given nor threat nor actual use of force was applied to either appellant. There were no cuts nor bruises on the face of either man after the questioning or on the morning following. In view of the conflict of the testimony and of the weakness of appellants' proof upon the subject of the asserted abuse of Pope, it was clearly the function of the jury to determine the propriety of considering the contents of the confession.

## Refusal of Offered Instructions Not Error

▓ The court correctly instructed the jury to disregard Pope's "asserted confession entirely, unless you, yourselves, by your own weighing of all the evidence . . . conclude that

the alleged confession was not only made, but was voluntary."
(CALJIC 29-A.)* Appellants complain that although
such instruction was not erroneous they were prejudiced by
the court's rejection of Caljic's "29-A alternate," which in
substance is the same as 29-A as given by the court. There-
fore, they could not have been prejudiced. (*People* v. *Westek,*
31 Cal.2d 469, 483 [190 P.2d 9].)

 Appellants requested an instruction "that if you
find that the defendants were subjected to threats or violence
. . . and that defendant Cryder made a confession . . .
produced by threats or violence, there is a presumption that
the influence of the prior improper treatment continued to
operate on the mind of the defendant and that any subsequent
confession is the result of the same influence which rendered
the prior confession involuntary . . ." The proposed in-
struction assumed that "the same influence rendered the
prior confession involuntary" and would therefore have con-
stituted the court's opinion as indicated by the order overrul-
ing the objection to the confession. Moreover, there was no
offer of a confession by Cryder and for that reason the court
was warranted in rejecting the proposed instruction. But
even if Pope's name had been substituted for that of Cryder,
the instruction would have been wholly improper, since Pope
made no subsequent "confession." The reference was to a
later conversation in which Pope admitted that his confession
as recorded was in the main correct. "Admission" is not
the synonym of "confession." In a criminal action an ad-
mission against interest relates to factual matters and does not
convey the idea of a criminal intent on the part of him who
admits, whereas a confession is an acknowledgment of the
guilt of the crime charged. It is only with respect to
the confession that the rule obtains requiring preliminary
proof that it was voluntary. (*People* v. *Fowler,* 178 Cal. 657,
664 [174 P. 892] ; *People* v. *Crowl,* 28 Cal.App.2d 299, 309
[82 P.2d 507] ; *People* v. *Sourisseau,* 62 Cal.App.2d 917, 929
[145 P. 2d 916].) Inasmuch as Pope's admission does not
have the significance of a confession the question whether
there was concomitant violence was immaterial (*People* v.
*Connelly,* 195 Cal. 584, 597 [234 P. 374] ; *People* v. *Adams,*
198 Cal. 454, 465 [245 P. 821] ; *People* v. *Trawick,* 78 Cal.
App.2d 604, 608 [178 P.2d 45]) and therefore the proposed
instruction with reference to the continuance of the asserted
malign influence was not appropriate to the occasion.

_____

*California Jury Instructions, Criminal.

 Moreover, it may be added that since the record discloses abundant evidence which, if believed, constitutes proof of the guilt of the defendants it cannot be said that from any aspect of the case the rejection of any or all of the proposed instructions prejudiced appellants. (*People* v. *Gonzales,* 24 Cal.2d 870, 877 [151 P.2d 251].)

### No Abuse of Discretion

 Appellants assign as prejudicially erroneous four specific rulings with respect to which a wide discretion is vested in the trial court, namely: (1) denying their request for the exclusion of the state's witnesses from the courtroom; (2) refusing appellants' request for permission to make an opening statement following that of the district attorney; (3) granting a continuance from the 5th to the 23d of March, 1948, and a second continuance to April 1, and appointing a physician to examine Mrs. Boggio after appellants had announced ready for trial; (4) denying appellants' request to have the jury view an automobile which would assertedly have been material proof of their innocence. The power to make such rulings is peculiar to the province of the trial court wherein resides the perpetual and exclusive jurisdiction to make such decisions in the absence of a showing of abuse of discretion. Such authority is impliedly admitted by appellants with respect to points (1) and (3) concerning which no arguments are made. As to point (2) section 1093 of the Penal Code in prescribing the order of proceedings at a trial, makes no mention of an opening statement by the accused. But subdivision 2 says that the district attorney "must open the cause and offer evidence in support of the charge." Subdivision 3 provides that the defendant "may *then* open the defense and offer his evidence." Such language impliedly commands silence on the part of the accused until the prosecution shall have introduced his proof. Such statute makes no provision for an opening statement by the defendant at the close of the prosecutor's opening statement. (*People* v. *Dunn,* 40 Cal.App.2d 6, 14 [104 P.2d 119].)

With respect to point (4) there is no statutory right for such an order and no showing is made of an abuse of discretion in denying the request for the jury to inspect the automobile.

The judgments and order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.