[Crim. No. 2713.    Third Dist.    Sept. 20, 1957.]

THE PEOPLE, Respondent, v. ALBERT W. CHILDERS, JR., et al., Defendants; DANA E. GENTRY, Appellant.

18

Richard M. Grossberg, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier, and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Appellant was charged with the robbery of $190 from the Alkali Café in the possession of Norman Benson by means of force, to wit, a rifle, and with prior felony convictions of first degree robbery. Appellant and one Childers were found guilty of first degree robbery by a jury. Appellant filed a notice of appeal from the judgment and from the order denying appellant's motion for a new trial, but the record fails to disclose that any motion for a new trial was made.

The record shows that on the morning of January 5, 1956, the appellant, Dana Gentry, and Albert Childers, Jr., drove into the alley between E and F Streets in the city of Sacramento and parked Childers' Ford. Both men entered the Alkali Bar wearing handkerchiefs over the lower portion of

their faces, and Childers was carrying a rifle. Childers announced to the eight or ten patrons and the bartender that "This is a stickup." Childers, who remained near the entrance of the bar, directed the operation and, at rifle-point, required the patrons to line up at the back of the room. Childers told the bar inhabitants to throw their wallets on the floor. Appellant jumped over the bar and emptied the cash register of approximately $197. Childers picked up the wallets, and the two men departed. They returned to appellant's home in North Sacramento, and on their way threw the empty wallets into a creek. The two men had been living in the same house until about one month prior to the robbery. Childers' sister is appellant's stepmother.

Childers was arrested on February 3, 1956, and was questioned by the sheriff's department concerning several offenses which included the Alkali robbery. Childers, after six or seven hours of questioning, made a statement implicating himself with the Alkali robbery.

Appellant was arrested on February 5, 1956, and interrogated by the sheriff's office concerning various crimes that were on the books. Appellant, when questioned about the Alkali robbery, denied the same. Appellant thereafter was placed in the same room with Childers and another party and after the parties discussed their predicament appellant made a statement to the deputy sheriff connecting himself with the Alkali robbery. He was taken to the district attorney's office where, before Edward J. St. Amour, official court reporter, he confessed to the commission of the alleged offense.

Deputy Sheriff Parker Smith searched appellant's home and found a rifle with six shells in the magazine, which was identified by the victims and introduced into evidence. (People's Exhibit 1.) During the course of the trial Childers was positively identified as the tall party who held the rifle and robbed the Alkali Café. Wesley Gibson, one of the victims in the bar, testified that appellant resembled the smaller of the two robbers.

Appellant testified that the confession was extracted from him as a result of threats made by the peace officers against his wife, his brother, Norman Gentry, on parole from the California Youth Authority, and his friends. The officers who procured the confession denied the use of force, threats, promises, or offers.

Appellant offered testimony through himself, his wife and brother to the effect that the three parties attended a movie

together on January 4, 1956, and upon returning home at about 12:30 or 1 o'clock, played cards until 3 o'clock, which included the time during which the robbery took place.

As grounds for a reversal of the judgment appellant contends (1) that his confession was inadmissible because it was false and not free and voluntary; (2) that the evidence was not sufficient to justify a finding that appellant was guilty of the crime charged; (3) that the assistant district attorney committed misconduct in his closing argument which deprived appellant of a fair trial.

Appellant contends that the court committed error in admitting into evidence his confession because the confession was false and not free and voluntary. Appellant asserts that the peace officers, namely, Mayberry and Munizich, threatened to arrest his brother and wife if he did not confess to the alleged offense. Appellant further alleges that the confession would not have been made by him had the officers refrained from the aforesaid threats.

The law is settled in California with respect to the inadmissibility of confessions into evidence. The matter of admissibility is a preliminary question addressed to the trial court to determine the issue of whether or not the confession was freely and voluntarily given. (*People* v. *Jones*, 24 Cal. 2d 601 [150 P.2d 801]; *People* v. *Cryder*, 90 Cal.App.2d 194 [202 P.2d 765].)

If the trial court admits the confession into evidence and there is a conflict in the evidence as to the free and voluntary character of the confession it is then a question for the trier of fact to determine whether the confession was free from coercion, threats, violence, or promises. (*People* v. *Fox*, 25 Cal.2d 330 [153 P.2d 729]; *People* v. *Cryder, supra.*) If the jury determines that the confession was not freely given they are required to disregard the confession in their consideration of the case. (*People* v. *Cryder, supra.*) An involuntary confession is no confession. (*People* v. *Fox, supra.*)

In the instant matter the district attorney laid a foundation for appellant's confession and upon objection by appellant as to the involuntariness of the confession a voir dire examination was conducted of the witnesses before the confession was admitted. The trial court in the presence of the jury heard the testimony of the officers and appellant. The appellant contended his family was threatened with arrest by the peace

officers if appellant did not confess to the robbery, while the officers denied the use of any threats in exacting the confession from appellant.

The court, after hearing the voir dire examination of the witnesses and upon admitting the confession into evidence, gave the following instruction to the jury:

"Now, ladies and gentlemen of the jury, the law forbids you to consider a confession in determining the innocence or guilt of a defendant unless the confession was voluntarily made, and although the Court is admitting evidence tending to show that the defendant or defendants made a confession, you must disregard the asserted confession entirely unless you, yourselves, by your own weighing of all the evidence, by your own judging of the credibility of witnesses, and your own reasonable deductions, conclude that the alleged confession not only was made but was made voluntarily.

"Now, a confession is not voluntary when it has been obtained by any kind or degree of violence, abuse or threat, or by any direct or implied promise of immunity, leniency, or other benefit, or by any coaxing, cajoling, or menacing influence which induces in the mind of the defendant the belief or hope that he will gain some advantages by making a confession; provided that any such inducement by which the confession is obtained originates either from a law enforcement officer or in the presence of such an officer under circumstances from which the accused might reasonably be expected to assume that the inducement was authorized by the officer."

In view of the testimony received on voir dire and the instruction given by the court to the jury, we are convinced that no error was committed in admitting the confession into evidence. ▮ A wide discretion vested in the trial court with respect to admissibility of confessions and its finding will not be disturbed on appeal unless there has been a clear abuse of discretion. (*People* v. *Castello,* 194 Cal. 595 [229 P. 855] ; 19 Cal.Jur.2d, pp. 183-184.) Here the ultimate nature of the confession was properly submitted to the jury and we must assume it followed the court's instruction.

Appellant contends further that there was insufficient evidence to support the judgment of conviction. He argues that his extrajudicial confession could not be considered for the purpose of proving the corpus delicti and that without it there was no supporting evidence. Appellant's argument is unsound for there was ample evidence to prove the corpus delicti and there was supporting evidence in addition to his confession.

■ While it is true that a conviction based upon an extra-judicial confession of a defendant is insufficient unless the confession is supported by independent proof of the corpus delicti (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752] ; *People* v. *Seymour*, 54 Cal.App.2d 266 [128 P.2d 726]), all that is required to be shown by the prosecution to establish the corpus delicti is that a crime has been committed by someone. (*People* v. *Cobb, supra.*) ■ "Proof of the corpus delicti does not require proof of the identity of the perpetrator of the crime nor proof that the crime was committed by the defendant." (*People* v. *Cobb, supra*, at p. 161.) In the instant case there was direct testimony of Norman C. Benson, the bartender of the Alkali Café, Raymond Keck, Otto F. Muenich and Wesley Gibson, patrons of the Alkali Café on January 5, 1956, the day of the robbery, establishing the fact that a robbery transpired on January 5, 1956. Their evidence clearly established the corpus delicti of the crime for which appellant was charged and convicted.

■ Where the corpus delicti has been established a defendant may be convicted on the strength of his own confession. (*People* v. *Hammond*, 26 Cal.App.2d 145 [78 P.2d 1172].) ■ The jury may consider the confession with other evidence in determining whether all elements of the offense have been proved beyond a reasonable doubt. (*People* v. *Powell*, 34 Cal.2d 196 [208 P.2d 974] ; *People* v. *Day*, 71 Cal.App.2d 1 [161 P.2d 803].)

The prosecution also introduced into evidence People's Exhibit Number 1 which was the rifle identified by the bar victims as that used in the robbery. People's Exhibit Number 1 was found in appellant's home. The appellant testified that the weapon belonged to his father who resided at the same abode as the appellant.

Wesley Gibson, one of the victims in the bar, testified that appellant resembled the smaller of the two robbers. Although none of the other victims positively identified appellant it is understandable in light of the fact that Childers held the weapon and all eyes were focused on his person and the weapon. ■ The law does not require the victim to make a positive identification of the defendant. (*People* v. *Nixt*, 105 Cal.App.2d 256 [232 P.2d 915] ; *People* v. *Harris*, 87 Cal. App.2d 818 [198 P.2d 60].) There was also evidence of the close family relationship of the appellant and Childers and the fact that they had previously resided in the same home.

■ The jury is the judge of the weight of the evidence and the credibility of the witnesses, and the evidence in the instant case is ample to support the judgment.

Appellant's final major contention is that "the major reason for his conviction was not through any evidence produced by the prosecution, but through the many insinuations and remarks made by the assistant district attorney which amounted to a flagrant violation of his oath of office and which resulted in his prejudicial misconduct against appellant and appellant's witnesses." Appellant makes mention of three instances in the closing argument of the assistant district attorney which he contends constituted prejudicial misconduct. However, in each of the instances referred to by the appellant, the appellant at the time of the alleged misconduct failed to make an objection to the assistant district attorney's statements nor did appellant seek admonition or jury instructions that would cure the alleged misconduct. ■ As stated in *People* v. *Hampton,* 47 Cal.2d 239, at page 240 [302 P.2d 300]:

"The rule is established that unless the harmful results of misconduct of the district attorney cannot be obviated by appropriate instructions of the trial court, error cannot be predicated in this court on such alleged misconduct in the absence of (a) assignment of such misconduct as error; and (b) a request to the trial court to instruct the jury to disregard it. (*People* v. *Sampsell,* 34 Cal.2d 757 at 764 [214 P.2d 813]; *People* v. *Byrd,* 42 Cal.2d 200 at 208 [3] [266 P.2d 505]; *People* v. *Tolson,* 109 Cal.App.2d 579 at 582 [3] [241 P.2d 32].)"

We have carefully examined all of appellant's claims of prejudicial misconduct of the assistant district attorney and find no merit in them. The remarks complained of were not only within the bounds of legitimate argument but were of such a character that an objection thereto and an instruction from the trial court would have removed any prejudicial effect that the alleged improper remarks might have had.

Because of the fact that the appellant has filed his briefs in propria persona, we have carefully examined the entire record and have concluded that the appellant was given a fair trial, that the evidence is sufficient to support the judgment, that the jury was fully and correctly instructed, and that no prejudicial error was committed.

The judgment is affirmed. The purported appeal from the

24

order denying the motion for a new trial is dismissed as no such motion was made.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied October 11, 1957, and appellant's petition for a hearing by the Supreme Court was denied November 13, 1957.