[Crim. No. 4205. First Dist., Div. Two. June 13, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH LAWRENCE DYER, Defendant and Appellant.

Carl J. Weber, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Keith E. Pugh, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Appellant, J. L. Dyer, was charged by information with robbery, kidnaping, rape, and three prior convictions which were admitted. After proper waiver of a jury trial, he was found guilty of kidnaping (Pen. Code, § 207), rape (Pen. Code, § 261) and robbery (Pen. Code, § 211). On this appeal from the judgment and the order denying his motion for a new trial, he contends that the evidence is insufficient to support the judgment as a matter of law and that the trial court erred in permitting the introduction into evidence of his involuntary confession. ■ As the notice of appeal was filed on May 8, 1962, the appeal from the order denying the motion for a new trial must be dismissed as an appeal from an unappealable order (*People* v. *Britton*, 205 Cal.App.2d 561 [22 Cal.Rptr. 921]).

Viewing the record most favorably to the judgment, as we must, the facts are as follows: On Saturday, October 21, 1961, the appellant, and his companions, Robert Braden, Ernie Stevens, James Givens and Donald Hankins, worked together all day at a box factory on 99th Avenue in Oakland. They had been drinking wine and beer all day and were all intoxicated. About 6 or 7 p.m., they left together in Givens' 1949 light-colored Cadillac and went to the home of a girl named Chris on 23d Avenue and drank more beer. They left there

about 8:30 p.m. and went to the home of Idella Graham who lived nearby. They left Idella's between 8:30 and 9:30 p.m.

About 9:30 p.m. that evening, Mrs. Innie Mae Pililaau, who lived at 1907 23rd Avenue, was sitting in her parked car talking to Alfred Emery. Rita Groll, a 12-year-old friend of Mrs. Pililaau, stopped to talk with her while walking home from church. The Givens' Cadillac pulled up and the men called out for the young girl to come over to their car. Rita refused and the men got out of the Cadillac, whereupon Mrs. Pililaau got out of her car and attempted to push the little girl into it. One of the men struck Mrs. Pililaau, while another knocked her down, and the driver of the Cadillac drove the car back and forth across her foot twice. The young girl ran home and the men proceeded to break the windows of Mrs. Pililaau's car.

The appellant and the rest of the group then proceeded to a nearby "Doggie Diner" where the appellant asked a couple for a pencil so he could take down the addresses and telephone numbers of some girls. They then drove around the corner to 33d Avenue where they saw the complaining witness, Mary Smith, and her husband, Jack, walking on the sidewalk. The Smiths had been celebrating and dancing at the nearby Fanfare Club and were somewhat intoxicated. Mr. Smith attempted to place Mrs. Smith's coat about her shoulders but she was playfully avoiding it. The appellant left the Cadillac and crossed over to Mr. Smith. The appellant knocked Mr. Smith to the ground, continued to hit him, and then pulled the prostrate form of Smith into the alley, took Mr. Smith's wallet and returned to the car. In the meantime, Hankins forced Mrs. Smith into the back seat of the Cadillac. The group drove away after pushing Mrs. Smith down on the floor of the back seat. After dropping Braden off at his home, the others drove to a secluded spot on the Oakport Road where Hankins, Stevens and Givens forcibly attacked Mrs. Smith. After the others were through, the appellant was asked if he wanted his turn and he replied in the negative. The group then took Hankins home and returned to the same spot on Oakport Road and they pushed Mrs. Smith out of the car.

The first contention on appeal is that the evidence is insufficient to support the judgment as a matter of law, as the appellant did not participate in the kidnaping and rape of Mrs. Smith and was not an aider and abettor or coconspirator.

This contention is based on appellant's version of the evidence which is that he was not present during the attack on Mrs. Pililaau because he had remained at Idella Graham's home; that the Smiths appeared to be arguing and fighting; and that he was not present when Mrs. Smith was raped because he had been dropped off immediately after Braden. However, the record indicates that Mrs. Pililaau, Alfred Emery and the 12-year-old girl all identified the appellant as being a participant. ■ Appellant's knowledge and criminal intent may be inferred from his companionship and conduct before and after the offense (*People* v. *Moore*, 120 Cal.App.2d 303, 306 [260 P.2d 1011]).

■ It is well settled that conflicts in the evidence are for the trier of fact and we think there can be no question that there is substantial evidence to support the findings and conclusions. ■ An appellate court can set aside the verdict of the trier of fact only when there is no substantial or credible evidence in the record to support it or the evidence relied upon by the prosecution is so inherently improbable or false as to be incredible. ■ The appellant's statement to the police admitted his presence during the attack on Mrs. Smith. Appellant's presence lent support and encouragement to his companions and created a greater threat in the mind of the victim (*People* v. *Marshall*, 132 Cal.App.2d 18, 19 [281 P.2d 260]). By his assault and robbery of Mr. Smith, the appellant enabled his companions to take advantage of the victim's condition and force her into the car (*People* v. *Hannon*, 44 Cal.App.2d 484, 494 [112 P.2d 719]). Appellant's failure to withdraw at the time Braden insisted on being taken home led the others to believe that all of the remaining were of one mind (*People* v. *King*, 30 Cal.App.2d 185 [85 P.2d 928]). ■ Whether or not a person present at the scene of the crime has aided and abetted the perpetration of the crime is one of fact. ■ Under the circumstances, we think the trial court properly concluded that the appellant was a principal in the rape of Mrs. Smith (Pen. Code, § 31).

The second contention on appeal is that the trial court erroneously admitted into evidence appellant's involuntary statement made to the police immediately after his arrest. Appellant attempts to argue that he was denied due process because the statement was given to the police in return for an implied promise to make a favorable report to the Adult Authority, and without advising him of his right to counsel and of his privilege against self-incrimination. The record indicates that

the appellant was arrested about 1:30 a.m. on Sunday, October 22. The statement was made to the police about 5:30 p.m. on Monday, October 23. The appellant testified that an unidentified police lieutenant told him if he would confess to the crime, he would let him go in a few days and that honestly believing his promise, he made a false confession. However, appellant's statement was taken by another officer, Inspector Prince. Four of the police officers who talked to the appellant on the morning after his arrest indicated that the appellant was arrogant and uncooperative and told conflicting stories about his whereabouts. No promises or threats were made. Inspector Zweigle testified that he was present when Inspector Prince talked to the appellant and that no promises or threats were made.

Inspector Prince testified that when he and Inspector Zweigle talked to the appellant about an hour before the recorded statement, the appellant was uncooperative. When Inspector Prince went to see the appellant about an hour later, he had been told the appellant had indicated his desire to make a statement. When Inspector Prince entered the room saying: "I understand you are willing to talk to us now or give a statement," the appellant responded affirmatively. Before the recording, they discussed the recording process and general outline of the statement for about ten minutes. Inspector Prince remarked he was glad because appellant's attitude of cooperation would be appreciated by the Adult Authority. The statement was recorded and indicated in its terms that it was free and voluntary; that the appellant was not threatened nor were any promises made.

Thus, we are faced with a conflict in the evidence. ▮ The rule is that when there is a conflict as to whether a confession has been freely and voluntarily made, the determination of the trial court as to voluntariness when supported by substantial evidence is binding on the appellate court (*People* v. *Kendrick*, 56 Cal.2d 71 [14 Cal.Rptr. 13, 363 P.2d 13]). ▮ We think the trial court's finding in the instant case is amply supported by the evidence. The reference of Inspector Prince to the Adult Authority was merely a stamp of approval on the appellant's decision to make a statement. Furthermore, the record indicates that appellant had evidenced his intent to confess before the inspector entered the room. Thus, the reference to the Adult Authority occurred after appellant's decision. ▮ Where a promise of immunity follows a confession, it does not render the confession in-

admissible (*People* v. *Lindsey*, 188 Cal.App.2d 471, 476-477 [10 Cal.Rptr. 488]).

As to appellant's contention that he was never advised during his interrogation of his right to consult with counsel or his right to remain silent, it is well settled that a confession is not rendered inadmissible by such factor but simply that these matters are to be taken into consideration in determining the voluntariness thereof (*People* v. *Kendrick, supra*). We conclude that the appellant's statement was properly admitted.

No prejudicial error appearing in the record before us, the judgment is hereby affirmed and the appeal from the order denying the motion for a new trial is dismissed.

Shoemaker, J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 7, 1963.