[Civ. No. 17164. Third Dist. July 11, 1978.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF GLENN COUNTY, Respondent;
BRUCE LEE CROOK, Real Party in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Paul H. Dobson and James Ching, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Peter Billiou Twede for Real Party in Interest.

**OPINION**

**EVANS, J.**—The People have petitioned for a writ of mandate directing that the respondent court annul its order suppressing oral admissions and confessions made by real party in interest, Bruce Lee Crook (hereinafter

defendant). The order of suppression found the confessions and admissions to have been given in reliance upon an offer of immunity from the prosecution.

Defendant and Anthony Trexler were suspected of burglarizing a number of service station drop safes; Trexler was also believed to be involved in a number of other criminal activities then under investigation. A number of search warrants had been issued authorizing a search of vehicles earlier observed at one of the burglarized service stations; defendant was observed driving one of the described vehicles and was stopped by a sheriff's deputy, accompanied by District Attorney Maloney. Crook advised the officer that he wished to speak to the district attorney, and when approached by Maloney, stated that he would like to discuss the matter and offered, " '. . . I didn't really have nothing to do with this thing and I don't want to take the heat.' . . . 'I'd like to tell you about it.' " Following some discussion, defendant agreed to and did continue the interrogation at the sheriff's substation. At the interrogation, FBI Agent Ott and Agent Garby from Southern Pacific Railroad, as well as other sheriff's officers, were present because of Trexler's other activities involving an attempt to wreck a passenger train and rob the passengers. Defendant was given a *Miranda* warning (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), but before any questioning commenced, the district attorney offered him immunity from prosecution for information relating to the service station burglaries.

At the hearing on the motion to suppress, the district attorney testified that defendant was advised that he did not have prosecution immunity for any other crimes which might be disclosed during the questioning. The defendant was asked if he understood the nature of the immunity offered, and indicated that he did and agreed to continue his discussions with District Attorney Maloney and the sheriff's deputies. The record indicates that the terms of the offer were repeated to defendant several times during the course of the interrogation, after which the defendant gave detailed information relating to the service station burglaries.

During the questioning, the district attorney was informed that a search of a trailer belonging to Trexler had disclosed items taken in a burglary perpetrated at the Vereschagin residence. The district attorney then concluded the questioning relating to the service station burglaries by asking defendant, "you know while we are talking under immunity is there anything else that you have to say to us, and we have been talking about the theft?" Defendant replied in the negative and the district

attorney then stated, "all right, there is another matter that we would like to discuss with you, however, it is not included in the immunity, you have no immunity for it. You don't have to talk to us about it if you don't want to." The district attorney testified that defendant advised his interrogators that he knew about the Vereschagin burglary, and although again admonished that he did not have to talk to them if he didn't wish and that any such discussion would not be within the offer of immunity, he agreed to and did discuss in detail the Vereschagin burglary.

After these discussions, the deputy sheriffs were asked by the district attorney to obtain a taped statement from defendant relating to the matters discussed. Defendant was again advised of his *Miranda* rights and advised that immunity did not apply to any transaction discussed except the service station burglaries. Detective Catrone and Sergeant Roberts then obtained a taped statement from Crook about the service station burglaries as well as the Vereschagin burglary. On the taped interrogation, defendant acknowledged his participation in both.

The first of two taped statements related to the Vereschagin burglary, and at the outset of the questioning, defendant was again advised of his *Miranda* rights. At the conclusion of that tape, defendant acknowledged that the statement was made of his own free will and that he had not been offered immunity for the statement. The defendant described in detail his involvement in the Vereschagin burglary, how it was accomplished, and what was taken.

The second statement, taken approximately 10 minutes later, related to the service station burglaries; again, the defendant was advised of his *Miranda* rights and informed that he was within the immunity granted from prosecution for those burglaries. Defendant then gave detailed information relating to the service station burglaries, how they were accomplished, and the extent of his participation.

He was thereafter charged by information with the burglary of the Vereschagin property, and the motion to suppress all statements, confessions, and evidence relating to the Vereschagin burglary was made.

Although the grant of immunity offered by the district attorney was not formalized pursuant to Penal Code section 1324, the trial court correctly concluded that the district attorney has the inherent power to grant a general or limited immunity without complying with the formalities of that section. (*People* v. *Label* (1974) 43 Cal.App.3d 766, 774 [119 Cal.Rptr. 522].) However, failing to find the immunity to be limited

in nature, the court, in suppressing the confession and all resulting evidence relating to the Vereschagin burglary, stated in part, "The failure of the prosecutor to comply with the statute in offering limited immunity however puts a great burden on the People to establish the extent of the immunity so offered. Without regarding the effectiveness of the immunity allegedly offered to the Defendant in the instant case, the offer made by the prosecutor for the advantage of the accused would clearly lend itself as the motivating cause for the Defendant's statement implicating himself in the various and sundry burglaries, including the burglary which he is currently charged with. Furthermore, the limitations imposed on the offer of immunity, being limited to the greater or lessor [*sic*] recollections of the various witnesses, are not so clearly set forth as to preclude the Court from considering that the motivating cause for the Defendant's incriminating statements was in fact the original offer of immunity."

## I

We acknowledge and affirm that when there is a conflict in the evidence as to whether a confession has been freely and voluntarily made, the determination of the trial court, when supported by substantial evidence, is binding upon the appellate court. (*People* v. *Dyer* (1963) 217 Cal.App.2d 176, 181 [31 Cal.Rptr. 557].) However, in the instant proceeding, we fail to find any evidence, let alone substantial, to support the trial court's order. The record reveals no evidence conflicting with that presented by the prosecutor. It leads us to conclude that the trial court unjustifiably ignored the testimony of the several witnesses who affirmed the limits of the offered immunity; we also conclude that in suppressing the confession, the court erroneously relied upon statements contained in *People* v. *Fleming* (Cal.App.) that if a limited offer of immunity is not made in accordance with Penal Code section 1324, complete transactional immunity is afforded. *People* v. *Fleming* is no longer binding decisional authority or precedent, having been ordered removed from publication by the Supreme Court on September 8, 1976, approximately one year prior to the trial court's suppression order. (Cal. Rules of Court, rule 976.)

The entire evidence presented in connection with defendant's motion to suppress consists of the testimony of the district attorney, an FBI agent, a Southern Pacific agent, and sheriff's officers who were present when defendant was repeatedly advised that the offered immunity related only to the service station burglaries and not to the Vereschagin burglary. Each

witness testified that defendant nevertheless detailed his participation in the Vereschagin burglary. The sole articulated contradiction to this mass of evidence (including the cassette tape recording which specified the nature of the immunity offered) was defense counsel's opening and concluding unsworn statements preliminary to and following the suppression motion, neither of which may be considered probative evidence.

Thus, the totality of the evidence reveals a grant of limited immunity which, although not formalized pursuant to Penal Code section 1324, was within the inherent power of the prosecuting authority to grant. (*People* v. *Bateman* (1926) 80 Cal.App. 151, 155 [251 P. 335]; *People* v. *Label, supra,* 43 Cal.App.3d at p. 774; *People* v. *Pineda* (1973) 30 Cal.App.3d 860, 867-868 [106 Cal.Rptr. 743]; *People* v. *Brunner* (1973) 32 Cal.App.3d 908, 915 [108 Cal.Rptr. 501].)

## II

Inasmuch as we conclude that the immunity offered and granted was limited in its scope to the service station burglaries and did not encompass any other criminal activity, we next consider the voluntariness of the confession or statement. Such confession or statement is voluntary when it is the product of a rational intellect and a free will. (*Davis* v. *North Carolina* (1966) 384 U.S. 737, 739 [16 L.Ed.2d 895, 896-897, 86 S.Ct. 1761].) In inquiring into the voluntariness of the defendant's confession, we have examined the totality of the circumstances surrounding the conduct of the representatives of the state. We have considered facts such as the length of the questioning, the nature of the interrogation, the conduct of the defendant and of those in position of authority. All are relevant in determining whether the defendant's free will was overborne. (*People* v. *Stewart* (1965) 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].) The evidence reveals a complete and absolute voluntariness of the statements made by defendant and that they were given without reservation, without promise of immunity, and without fear or threat of violence. As such, the respondent court erroneously suppressed the confession of defendant's involvement in the Vereschagin burglary.

Let a peremptory writ of mandate issue ordering the respondent superior court to vacate its suppression order issued on August 17, 1977, in Glenn County Superior Court action Number 15947, and further directing it to enter an order denying the motion to suppress.

Paras, Acting P. J., concurred.

**REYNOSO, J.**—I dissent. We deal with an issue of substantial evidence. The majority find that there is no such evidence in the record to support the trial court's ruling suppressing the defendant's incriminating statements (Pen. Code, § 1538.5). My review of the record convinces me otherwise. I necessarily disagree with the majority's conclusion that, as a matter of law, only limited immunity appears.

In resolving the issue of sufficiency of the evidence, we are bound by established rules of appellate review which dictate that all factual matters will be reviewed most favorably to the prevailing party. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, p. 4236.) We must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Vann* (1974) 12 Cal.3d 220, 225 [115 Cal.Rptr. 352, 524 P.2d 824].) If the circumstances reasonably justify the trial court's finding, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Robillard* (1960) 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].) "In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*" (Italics in original; Witkin, *supra,* § 249 at p. 4241.) It is with these basic principles in mind that I turn to the record.

In suppressing the evidence, the trial judge concluded: "Furthermore, the limitations imposed on the offer of immunity, being limited to the greator or lessor [*sic*] recollections of the various witnesses, are not so clearly set forth as to preclude the Court from considering that the motivating cause for the Defendant's incriminating statements was in fact the original offer of immunity." From the evidence presented, the judge, as the trier of fact, found that the prosecution did not sufficiently establish the terms of the immunity. It is the trial court judge, the trier of fact, who listened to the witnesses, observed their demeanor, and evaluated their testimony. He is not compelled, of course, to believe any witness.

The testimony of three key witnesses at the hearing on the motion to suppress illustrates the vagueness and uncertainty of the circumstances surrounding the grant of immunity. On cross-examination the district attorney, who was present during the interrogation of the defendant and who apparently extended the offer of immunity, was asked: "Q. Okay. Can you recall what the statement regarding the immunity was? A. No." Thus, while the witness subsequently explained the immunity the exact extent was not clear.

And the testimony of Special F.B.I. Agent Ott, also present during the questioning, is equally deficient as to the crucial terms of the immunity offer:

"Q. So you do recall that Mr. Maloney did in fact tell him that he was unimmunized again from anything about the Vereschagin property burglary?

"A. I don't remember those exact words, no, sir." The witness then explained his recollection of the immunity discussion based on a "very, very hazy recollection."

Finally, the testimony of Officer Cotrone, who apparently taped the defendant's discussion of the two burglaries in a subsequent session, fails to demonstrate affirmatively the partial grant of immunity. The testimony of the witness on cross-examination follows:

"Q. Well, I'm asking you the reason you didn't or if you did mention anything about immunity prior to taking the taped statement of Vereschagin.

"A. I didn't mention anything.

"D. Did anybody?

"A. I don't know. I don't recoll [sic].

". . . . . . . . . . . . . . . . . .

"Q. Well, do you recall exactly what he was offered immunity for?

"A. No, I don't. I was there only to assist in the search and I ended up involved in taking the statements.

". . . . . . . . . . . . . . . . .

"THE COURT: Q. Officer Cotrone, you were not present when the district attorney offered the defendant immunity, were you?

"THE WITNESS: A. No, . . ." [The witness explained that another officer told him of the offered immunity.]

The vague quality of the testimony of each prosecution witness belies a conclusion that the judge could not have reached the determination that the defendant's incriminating statements were induced by the original offer of immunity. The testimony of those present during the interrogation of the defendant is the only evidence from which the trial judge could reconstruct the alleged limited grant of immunity. The record contains sufficient evidence to support the trial court's conclusion that an original grant of immunity probably provoked the defendant's subsequent incriminating statements. We cannot reweigh or reevaluate the evidence.

Furthermore, the failure of the People to comply with the statutory scheme of Penal Code section 1324 places a heavy burden on the People to establish the precise terms of the grant of immunity. "The cold record cannot give the look or manner of the witnesses; their hesitations, their doubts, their variations of language, their precipitancy, their calmness or consideration. A witness may convince all who hear him testify that he is disingenuous and untruthful, and yet his testimony, when read, may convey a most favorable impression." (*Maslow* v. *Maslow* (1953) 117 Cal.App.2d 237, 243 [255 P.2d 65].)

Penal Code section 1324 is the statutory scheme for grants of immunity. If the district attorney desired a limited grant of immunity, he need only have followed the statutory provision. Since the People failed to utilize the formal processes for granting immunity, any immunity promised must be construed broadly as providing immunity against prosecution for any of the activities the defendant revealed to the authorities. "As with plea bargains, terms of a promise of immunity should appear clearly on the record and be supported by court order. Full disclosure of the terms of the bargain not only protects against double-dealing, coercion, and misunderstanding . . . , but it enables an impartial judicial officer to review the propriety of the immunity bargain itself." (*People* v. *Brunner* (1973) 32 Cal.App.3d 908, 914 [108 Cal.Rptr. 501].) The statute establishes a procedure under which the bargain between prosecutors and witnesses can be made a matter of record so that dishonesty, equivocation, and misunderstanding may be minimized. The People can prevent this only by meeting their heavy burden of establishing the extent of the immunity offered. The People have not done so.

The majority emphasize that at times limited grants of immunity by prosecuting authorities, although not formalized pursuant to Penal Code section 1324, may be honored by the court. (*People* v. *Brunner, supra,* at

p. 915.)[1] In *Brunner,* a witness had been promised immunity against prosecution in exchange for an agreement to testify against two defendants. The witness complied with the agreement. The district attorney, alleging that Brunner testified untruthfully, sought to prosecute him. The court held that "It would be anomalous to permit the People, represented by the district attorney, to argue that an earlier agreement entered into by the district attorney was void for lack of compliance with a statute of whose existence the district attorney must have been aware." (*Ibid.*) That is, to permit prosecution of the offenses for which immunity was promised would result in a gross injustice. The court affirmed the dismissal of an indictment against Brunner. Manifestly, the *Brunner* ruling is inapplicable to the conclusion reached by the majority.

The record contains substantial evidence in support of the ruling by the trial court.

I would deny the writ. No peremptory writ of mandate should issue instructing the superior court to vacate its suppression order.

---

[1]Unlike the majority, I do not read *People* v. *Label* (1974) 43 Cal.App.3d 766 [119 Cal.Rptr. 522], as standing for the proposition that the district attorney has inherent power to grant a general or limited immunity without complying with Penal Code section 1324.